UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| EASTSIDE LINCOLN MERCURY, INC., et al., | : : | Case No. C-1-01-567 |
| Plaintiffs, | : : | Judge Susan J. Dlott |
| v. | : : | PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE |
| FORD MOTOR COMPANY, et al., | : : | MOTION TO STRIKE OF THE FORD DEFENDANTS |

_____

**PRELIMINARY STATEMENT**

A motion to strike any evidence in the context of a summary judgment motion, and particularly the manner in which the Ford Defendants[1] attempt to employ it in this instance to strike the Plaintiffs' supplemental expert report, is procedurally improper. It does not matter that the Defendants, as a pretext upon which to base their motion, cited rules 702 and 703 of the Rules of Evidence and rules 26 and 37 of the Rules of Civil Procedure. Roger Bean's <u>testimony</u>, by affidavit and deposition, and not his Rule 26 expert report and/or supplemental report, is sufficient to oppose the Defendants' motion for summary judgment. <u>See</u> F.R.C.P. 56(c). Even if the requested relief is granted, Mr. Bean's testimony is still in the record and must be considered by the Court in ruling upon the motions for summary judgment. For this reason alone, the Defendants' motion is improper and should be overruled.

There is no basis in the Federal Rules of Civil Procedure for striking an affidavit

---

[1] Only the Ford Defendants supplemented their original summary judgment motion in light of the deposition testimony of Roger Bean, CPA and will hereafter be referred to simply as the "Defendants".

or portions thereof in the context of a summary judgment motion.  This Court, the Federal District Court for the Northern District of Ohio, the Sixth Circuit, and reasoned commentators have made clear that a motion to strike affidavits (and exhibits) is not appropriate in a summary judgment context.  Bovee v. Coopers & Lybrand, 216 F.R.D. 596, 599-600 (S.D. Ohio 2003)(quoting Wright & Miller, Fed. Prac. & Proc. § 1380 (footnote omitted)); Lombard v. MCI Telecomm., 13 F. Supp.2d 621, 625 (N.D. Ohio 1998)(quoting Dawson v. City of Kent, 682 F.Supp. 920 (N.D. Ohio 1988), affirmed, 865 F.2d 257 (6Th Cir. 1988)).  The Court may exclude consideration of affidavits it deems improper, or disregard what it deems inadmissible evidence as would be customary in evaluating a summary judgment motion, but the evidence should not be stricken from the record.  See Bovee, 216 F.R.D. 599-600 (citing Lombard, supra).

The Defendants' motion appears to be an indirect and improper attempt to strike the affidavit and deposition testimony of Roger Bean by seeking to strike his report.  It also appears to be an attempt to file two memoranda in support of Defendants' motion for summary judgment, in violation of the Court's order, in essence taking two simultaneous "bites of the apple", albeit one from each side.  Thus, the Court should overrule Ford's motion as improper and evaluate the summary judgment motion in light of the Defendants' supplemental memorandum, reserving any alleged evidentiary challenges to Mr. Bean's testimony for a proper pre-trial motion should one be filed.

**MEMORANDUM**

The rules cited by the Ford Defendants in support of their motion either do not apply or have not been violated by the Plaintiffs in offering the testimony of Mr. Bean, the Plaintiffs' expert, in support of its motion for summary judgment.  Assuming,

arguendo, that the Defendants motion is appropriate at this time or in this context, they make three arguments, 1) <u>some</u>[2] of Roger Bean's opinions are beyond the scope allowed by the Court in the September 29, 2003 hearing, 2) <u>some</u> of his opinions do not have sufficient evidentiary support, and 3) <u>some</u> documents and materials which Mr. Bean reviewed were allegedly not disclosed in discovery.  Though the motion, in exaggerated fashion, demands the entire report be stricken, it is clear that the Defendants only complain about <u>some</u> select portions of Mr. Bean's report and many opinions expressed therein are not challenged.

In addition, even though Mr. Bean was identified early in this case as a causation expert and later testified about his extensive experience as a consultant in the automotive industry, i.e., a "CPA for car dealers", the Defendants unfairly, and inappropriately, mislabel his report as the "Bean <u>Damages</u> Report", in a clumsy attempt to convince the Court that Mr. Bean is not an expert in areas of causation implicated in this case or that the Plaintiffs failed to identify him as such.  In the Plaintiffs' original expert witness disclosure of <u>July 28, 2002</u>, they described the areas in which Mr. Bean was expected to testify.

> Mr. Bean is an accountant with significant expertise in the area of automobile dealership operations and valuation.  **He will testify regarding damage issues, dealership valuation issues and industry practices and standards related to dealership operations.**  Many of Mr. Beans preliminary conclusions are summarized in the attached report.

<u>See</u> Plaintiffs' Identification of Experts and attached Exhibit A filed with the Court July 8,

---

[2]   The word "some" is underlined to emphasize the fact that the Defendants have requested that Mr. Bean's entire report, which encompasses many liability opinions and seven areas of damage opinions totaling $9,321,460.00, be stricken even though they only challenge a few select items contained therein.

2002 (emphasis added).  Mr. Bean testified by affidavit and deposition that he assisted, evaluated and advised dealers for over twenty (20) years in many areas of dealership operations, such as decisions to dual franchises, evaluating purchases and sales, and evaluating the impact of warranty audits on warranty sales, among others.  See R. Bean affidavit at ¶2 and deposition, infra.

This Court stated in the September 29, 2003 hearing that it would not allow the Plaintiffs to add "any additional experts on allocations or anything else." See transcript at 38, line 4, attached to Defendants' motion as Exhibit A.  This court further stated

> What I will allow you to do is this, <u>if you have **anything** you want to supplement Bean's testimony with, you can do that in the next two weeks</u>, I would say by October 15th.  And you can take his deposition if you want, because he will be an expert at trial.  <u>But he will be precluded from adding any **additional** things if he doesn't supplement by the 15th</u>.

Id. at line 5-15 (emphasis added but not required).  The Court also recognized that the Defendants "know most of what the expert is going to say" and that whatever Mr. Bean says is not going to be a "big surprise" to the Defendants.  Id. at 39, line 3-7.  After Ford's counsel expressed concern that the Bean deposition may change their summary judgment motion, the Court agreed it would allow additional time to further supplement the summary judgment motion.  Id. at 39, line 24 through 40, line 6.

This Court made clear that Mr. Bean was entitled to, and frankly expected to, supplement his report by "adding additional things" by October 15.  Nevertheless, each of the damage items in Mr. Bean's report, and the items to which he testified by affidavit and deposition, are clearly addressed in the complaint, the testimony of the Plaintiffs and, in fact, in the examination of all witnesses.

In the Defendants motion, they claim that the Bean report circumvents the denial

of the motion to add Mr. Watkins as an expert on the issue of allocation (only one of the seven areas on which Mr. Bean rendered opinions), that Bean's report "produced new documents unrelated to any allegedly newly discovered evidence", and opines in areas outside of Mr. Bean's expertise, such as liability issues.  See memorandum at 2.  None of these arguments has merit

## ARGUMENT

The Defendants' primary argument in support of their motion for summary judgment is that the Plaintiffs cannot prove any damages.  Mr. Bean, through his affidavit and deposition testimony, clearly discussed his expertise in the automotive industry and specified seven (7) areas of damage, and corresponding dollar amounts, which are attributable to the conduct of the Defendants.

### I. MR. BEAN IS ALLOWED TO SUPPLEMENT HIS OPINIONS ON ANY ISSUE RELEVANT TO THIS LITIGATION, INCLUDING VEHICLE ALLOCATION

The Defendants take a great many liberties in interpreting the Court's statements from the September 29, 2003 conference, though none of those interpretations are fair or accurate.  As quoted above, the Court did not place any limitation on the supplementation of Roger Bean's report and explicitly stated he was entitled to supplement his opinions and expected to add "additional things" or otherwise be precluded from adding them after October 15.  Allocation has been an issue in the Complaint, throughout the course of paper discovery, and in the deposition of nearly every witness.

The Defendants should be circumspect in even arguing about vehicle allocation issues, considering that **Ford destroyed vital allocation documents,** a fact to which

this Court indicated Ford may have to stipulate[3]. Such a stipulation would support a finding that Ford manipulated the allocation process in an effort to destroy the Plaintiffs' franchise. The Court further expressed its view that a spoliation of evidence issue may exist because of the document destruction.[4] In addition, only two weeks ago Ford's counsel "further supplemented" Ford's discovery responses with additional allocation documents, evidence that Ford has either concealed documents or simply didn't take the Plaintiff's discovery requests seriously enough to look for the relevant documents. See correspondence from Elizabeth McNellie, Esq., dated November 19, 2003, and additional discovery documents attached hereto as Exhibit 1. Such late production leads Plaintiff's counsel to question whether Ford's earlier document production was reliable and whether the destruction of allocation documents covering the critical time periods was intentional.

Contrary to Defendants' counsel's statements, this Court did not "expressly bar" Roger Bean from rendering opinions on allocation or in consulting with Glen Watkins. It stated that no "additional" experts were allowed and that Mr. Bean was entitled to supplement his report. The Court did not prohibit Mr. Bean from consulting with Mr. Watkins, particularly regarding conversations held before September 29, 2003, nor did the Court preclude Mr. Bean from working with Mr. Watkins in analyzing what allocation

---

[3]   See transcript at 40.

[4]   The Court expressed its concern that such destruction may have created a spoliation of evidence issue. See trascript at 8, 30.

data still existed.[5]

Mr. Bean's opinion on Ford's manipulation of vehicle allocation and resulting damage, summarized in section 4 of his report, is that Eastside was denied vehicles and that Reichert/KDG, Ford's hand-picked consolidator, was given favorable vehicle allocations and the amount of the financial damage attributable to this conduct. A mathematical analysis of the allocation process has not been possible because of Ford's destruction of documents. Mr. Bean relied upon the testimony and statements of George Beattie that Eastside was delayed in receiving its vehicles and not given an allocation of "hot product" as it was released, thus reducing its sales opportunities in the amount of $135,190.00.

Ford destroyed the allocation data, forcing ELM to rely on the "release date" or delivery date of vehicles to Eastside and its competitors to determine how many vehicles were provided to its competitors. Mr. Watkins contribution to the report, Exhibits XIII through XVI, are simply data tables and graphs, showing examples of the extent to which Reichert/KDG received Lincoln Navigator and LS vehicles earlier or in greater quantity than ELM. Mr. Beattie, ELM's general manage and other witnesses testified on this exact issue during depositions and it should come as no surprise to the Defendants.

Exhibit XVII, the actual "damage" chart or calculation related to section 4, is Mr. Beattie's estimate of the number of vehicles Eastside would have sold had they been provided the product in a fair and equitable fashion. There is no statement in Mr.

---

[5] There is no testimony as to what, if any portion of Mr. Bean's consultations with Mr. Watkins occurred before the September 29, 2003 hearing.

Bean's testimony that his damage calculations, or opinions as to the late or non-existent delivery of vehicles to ELM were based upon the opinions of Glen Watkins.

> II. **ROGER BEAN WAS IDENTIFIED AS A LIABILITY EXPERT AND IS COMPETENT TO TESTIFY IN THOSE AREAS**

The Defendants have adopted the unfounded position that Mr. Bean is only offered by the Plaintiffs as a damage, but not liability, expert and that he was "barred" by the Court in the September 29 hearing from rendering any other opinions. As stated above, Mr. Bean was identified to the Defendants on July 8, 2002 as both a liability and damages expert. See Plaintiffs' Identification of Experts. During the September 29 hearing, Plaintiffs' counsel requested to add Glen Watkins as an additional expert, which the court rejected as untimely. However, as stated above, this Court did not limit those areas in which Mr. Bean's report could be supplemented.

Mr. Bean's initial report, attached as Exhibit A to Plaintiffs' expert identification, listed those areas in which Mr. Bean was able to render a "preliminary" opinion, before discovery was undertaken, such as the decline in warranty volume and cost of warranty chargebacks related to the audits, increased costs and losses resulting from Ford's denial of ELM's request to dual, losses resulting from consolidation of the market, lost LPE money because of the wrongful denial of certification, and overall reduction in the value of the dealership. Each area is described as an area of damage, a comment which presumes that the Defendants' conduct is wrongful. It is important to note that Mr. Bean qualified his preliminary report by stating his opinions would be subject to change after discovery of additional items, including discovery of delay in approval of LPE status, delay in receipt of new vehicles, manipulation of allocations or deliveries,

advertising monies "channeled" to a competition, and numerous impacts related to market consolidation.

The Defendants apparently chose not to take Mr. Bean's deposition because they believed that the Plaintiffs had not properly identified a damage expert. Even after the Plaintiffs' Mr. Bean's affidavit in opposition to their motion for summary judgment, the Defendants still chose not to take his deposition. It was only after this Court allowed the supplementation of Mr. Bean's opinion, and strongly suggested that the Defendants take his deposition, that they even considered what Mr. Bean intended to testify about at trial.

Defendants' counsel misleads the Court by representing in the memorandum that Plaintiffs' counsel disclosed and proffered Mr. Bean <u>only</u> as a damage expert. <u>See</u> Defendants memorandum at 4-5. At the September 29 hearing, Plaintiffs' counsel, while arguing to add Mr. Watkins as an additional expert, stated only that Mr. Bean would need an allocation opinion to complete his damage analysis, and that one of the Defendants most significant defenses related to its argument that Plaintiffs lacked a damage expert. <u>See</u> transcript at 4-5. However, Plaintiffs' counsel did not, and will not, limit the scope of Mr. Bean's testimony to damages only and any such statement is incorrect.

The Defendants claim Mr. Bean is not qualified to testify on liability issues. However, the Defendants' memorandum ignores Mr. Bean's extensive qualifications in automobile dealership operations outlined in his affidavit and attached curriculum vitae, deposition and report. Mr. Bean has 25 years experience in public accounting, largely in the area of automobile dealership accounting and consulting, including consulting

with dealerships about their relationship with manufacturers, has represented over 30 area dealerships in Greater Cincinnati, including involvement in roughly 25 dealership sales or acquisitions, and has advised ELM for 20 years. Bean depo. at 6-7, 15.

During his testimony, Mr. Bean was very careful not to espouse any "legal conclusions", something reserved for the finder of fact, and stated that the opinions in his report, and to which he testified, were his own.[6] Bean depo. at 95-96. For example, it was his opinion that there is a significant disparity in the release dates for certain models to ELM verses the Reichert/KDG dealerships, which has damaged ELM. Bean depo .at 45-46. Mr. Bean also concluded that Ford's manipulation of its warranty audit process negatively impacted ELM's warranty sales performance. Bean depo. at 57. He also found multiple streams of loss arising from ELM's denial of the right to dual its facility with its neighboring Chevrolet facility—a privilege granted Defendant Reichert/KDG. Bean depo. at 129-130.

### III.   ROGER BEANS OPINIONS ARE BASED UPON FACTS IN EVIDENCE OR THOSE WHICH WILL BE ADMITTED IN EVIDENCE AT TRIAL

Defendants' argument that Mr. Bean's report is founded on insufficient bases and should be stricken, is bizarre, to say the least. The report is a mandatory filing required by the Court pursuant to Rule 26. An analysis of this argument alone makes

---

[6] Mr. Bean was assisted in analyzing vehicle allocation issues by Glen Watkins, who has experience in this area. (Bean depo. 39-40) He assisted Mr Bean in preparing two exhibits to his Report showing differences in release dates of new models to ELM verses dealerships owned by Defendant Reichert/KDG. (Bean depo 40, 152) Mr. Watkins worked under Mr. Bean's direction and supervision. (Bean depo. p 152) However, **it is Mr. Bean's opinion** that there is a significant disparity in the release dates for several models, which damaged ELM. (Depo. 45-46)

clear that this motion is inappropriate and unripe.

As an expert, Mr. Bean is entitled to base his opinions or inferences on facts or data either perceived by or made known to him at or before the hearing. Evid. R. 703. In addition, the facts or data upon which an expert bases his opinion need not even be admissible in evidence if they are of the type commonly relied upon by experts in a particular field. Id.

The only area to which the Defendants pointed in critiquing the bases of Mr. Bean's opinions was his testimony that the cumulative effect of the abusive warranty audits was to "chill" the service technicians and service managers from performing and claiming warranty work. Mr. Bean based his opinion on the testimony of George Beattie, which the finder of fact will have the right to weigh and evaluate, and his own experience with other dealers who were warranty audited. See R. Bean deposition at 59-61. The fact that Mr. Bean did not talk to each service technician, or the service manager, only impacts the weight given to his opinion. In addition, at trial, the service manager, Al Schimweg, a disclosed witness, will testify as to the effect of the abusive warranty audits on his technicians and his own willingness to perform and claim warranty work.

### IV.     FORD HAS NOT BEEN PREJUDICED BY BEAN'S SUPPLEMENTAL REPORT OR RECEIPT OF THE MATERIALS HE REVIEWED TO PREPARE IT

Ford argues that it has been prejudiced by not receiving certain documents considered by Mr. Bean until after discovery "closed" on June 2, 2003. This contention ignores the fact that the Court's earlier discovery order was amended by its order of September 29, 2003, permitting Mr. Bean's supplemental report and allowing the

defendants the right to take his deposition thereafter. Until the September 29 order was issued, Mr. Bean had no supplemental report and no occasion to identify any documents which he considered to prepare it, or which he created to explain it.[7]

The vast majority of the materials reviewed by Mr. Bean in rendering his Supplemental Report are the same as those previously listed as exhibits to his affidavit, filed August 15 as part of Plaintiffs' opposition to the summary judgment motions. Ford made no request to review any of those materials upon receiving Mr. Bean's affidavit. When Mr. Bean's Supplemental Report was served on October 15, defense counsel was asked in the cover letter to identify which of the materials Mr. Bean listed were desired before his deposition, given the fact that some documents were voluminous and the parties had already exchanged thousands of pages of documents generated during discovery. On October 20, Ford requested certain, specific documents which were express mailed the same day. Thus, Ford had all the documents it wanted 8 days before the deposition on October 29.

Had Ford truly felt prejudiced, Ford had the opportunity to request a postponement of the deposition, which Plaintiffs would have agreed to do. Ford made no such request, either before or at Mr. Bean's deposition. No documents were purposefully withheld by Plaintiffs as Ford alleges, though it is clear from Ford's recent disclosure of additional allocation documents that it has not itself complied with discovery requests which are more than one year old. It is apparent that Ford's belated

---

[7] At no time during the "lengthy course of discovery" alluded to by Ford did any defendant ever request Mr. Bean's deposition—until the Court "suggested" to the Defendants that they do so at the case conference of September 29th.

"objection" now is an effort to contrive an argument for prejudice where the facts do not support it.

## CONCLUSION

For those reasons stated above, the Defendants' motion to strike is improper and should be denied.

                    Respectfully submitted,

                    /s/ Gregory J. Berberich
                    _____
                    Alan J. Statman (#0012045)
                    Gregory J. Berberich (#0043651)
                    Lawrence A. Flemer (#0018673)
                    STATMAN, HARRIS, SIEGEL & EYRICH, LLC
                    2900 Chemed Center
                    255 EAST FIFTH STREET
                    CINCINNATI, OHIO 45202
                    Ph. (513) 621-2666
                    Fax. (513) 621-4896
                    Counsel for Plaintiffs

OF COUNSEL:

Loula Fuller, Esq.
Myers & Fuller, P.A.
402 Office Plaza Drive
Tallahassee, Florida 32301

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing was served on the 5th day of December 2003, by electronic mail, upon:

| | |
|---|---|
| Elizabeth A. McNellie<br>Baker & Hostetler, LLP<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215-4260 | Steven D. Hengehold<br>Rendigs, Fry, Keily & Dennis LLP<br>Fourth & Vine Tower, Suite 900<br>Cincinnati, Ohio 45202-3688 |

                                        /s/ Gregory J. Berberich
                                        _____
                                        Lawrence A. Flemer