```
 1                 UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF OHIO
 2                       WESTERN DIVISION

 3                          - - -

 4   EASTSIDE LINCOLN MERCURY,    :  CIVIL ACTION C-1-01-567
     et al.,                      :
 5                                :  Cincinnati, Ohio
              Plaintiffs,         :  Monday, September 29, 2003
 6                                :
        -vs-                      :
 7                                :
     FORD MOTOR COMPANY, et al.,  :  Conference in chambers
 8                                :
                                  :
 9            Defendant.          :  3:05 p.m.

10                          - - -

11              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE
12
                            - - -
13
     For the Plaintiffs:   Gregory J. Berberich, Esq.
14                         Alan J. Statman, Esq.
                           Statman, Harris, Siegel & Eyrich
15                         2900 Chemed Center
                           Cincinnati, Ohio  45202
16
     For the Defendants:   Steven D. Hengehold, Esq.
17                         Rendigs, Fry, Kiely & Dennis, LLP
                           900 Fourth and Vine Tower
18                         Cincinnati, Ohio  45202

19                         Robert C. Reichert, Esq.
                           9500 Kings Automall Road
20                         Cincinnati, Ohio  45249

21                         Elizabeth A. McNellie, Esq.
                           Brian Johnson, Esq.
22                         Baker & Hostetler LLP
                           65 East State Street, Suite 2100
23                         Columbus, Ohio  43215

24   Law Clerk:  Aly Stang
     Courtroom Deputy:  Steve Snyder
25   Court Reporter:  Betty Schwab
```

```
 1  that's in place.
 2          THE COURT:  When did discovery --
 3          MR. BERBERICH:  June, I think it was June 2nd, or
 4  it extended to June 2nd.  Because there was a witness that
 5  kind of came out of the cold so to speak.  He came up to
 6  us.  He was a former employee of Mr. Reichert.  So, anyway,
 7  and he also testified that there was money that was given
 8  preferentially to Mr. Reichert's dealerships that was not
 9  also offered to Mr. Woeste's dealerships.  And, as a
10  consequence of that, our allocation expert has done a
11  significant amount of preliminary work but also needs some
12  responses or some documents from Ford in order to finish
13  his opinions on whether, in fact, there are allocation
14  manipulations that have affected our dealership.
15          And so we went ahead and filed a motion.
16  Mr. Hengehold and Ms. McNellie's offices both filed
17  opposing motions saying that, when we met with the Court
18  the last time, Your Honor said these dates are in stone.
19  If you don't comply, you're done, something.  I'm
20  paraphrasing.
21          THE COURT:  That sounds about right.
22          MR. BERBERICH:  Okay.  And so that's why we're
23  before the Court.  It's been briefed on summary judgment.
24  One of the big defenses that the defendants raised is you
25  don't have a damage expert.  Well, we have a CPA who
```

1  rendered preliminary opinions before discovery was
2  completed on the damages that we suffered. Now he's
3  finalizing his opinions. But a lot of that is also going
4  to hinge on what the allocation expert says. Because they
5  can make a damage analysis that says, if you were denied
6  five cars this year, then this is the downstream impact
7  this is going to have on your dealership.
8       So we need to have a ruling from the Court on the
9  allocation expert so that our financial expert can conclude
10 his numbers and assumptions. The defense has raised the
11 issue, you know, that we haven't properly identified a
12 damages expert. We believe that we have. The Court, there
13 was some --
14       THE COURT: We're talking about two different
15 experts here now?
16       MR. BERBERICH: Correct.
17       THE COURT: So before -- I'm not sure what your
18 deadline was for expert identification.
19       MR. BERBERICH: We identified a gentleman by the
20 name of Roger Bean last year in '02 and provided a
21 preliminary report of his findings.
22       THE COURT: He's the accountant?
23       MR. BERBERICH: CPA. He's worked with our
24 dealership for a number of years, knows the financials
25 pretty well. Ford has an opposing expert, Dr. Mark

```
 1   Schmitz, and, because Ford gets our financial information
 2   very promptly, knows how many units we're selling and how
 3   many parts we're selling, they were able to provide a
 4   rebuttal report to Mr. Bean's preliminary report.  But, in
 5   order for Mr. Bean to do his final report and include the
 6   allocation damage, we need to have a gentleman by the name
 7   of Mr. Watkins, not only allowed to enter the case and
 8   render expert opinions, but also to have some follow-up
 9   documentation from Ford that we had requested and Ford says
10   is not available or was --
11           THE COURT:  What would your timetable be for
12   this?
13           MR. BERBERICH:  Probably -- well, there are two,
14   I guess two phases.  One is to find out from Ford if these
15   documents are really lost.  Like, for instance, there were
16   months of allocation reports that Ford says the manual
17   archive of these allocation reports was not captured for a
18   series of months due to a systems error.  I have no idea
19   what that means.  But our allocation expert says they
20   should have reports to find out how many cars Mr. Reichert
21   requested, how many he received, how many extra they gave
22   him, and for some significant periods of time when we think
23   that we were being targeted for consolidation.
24           THE COURT:  What --
25           MR. BERBERICH:  Probably 40 to 60 days.
```

```
 1   report?
 2             MR. BERBERICH:  Yes.  The preliminary report
 3   breaks out seven different discrete areas of damage and
 4   does the math on how he came up with his damage analysis.
 5             THE COURT:  Did you get the preliminary report?
 6             MS. MCNELLIE:  I did get the preliminary report,
 7   but there was no supplementation.  There was no provision
 8   of the materials under Rule 26 at all.  Supplementation
 9   occurred well after the discovery was closed and we had
10   filed our motion for summary judgment.
11             MR. STATMAN:  Since '02, they have never asked
12   for a deposition.
13             THE COURT:  Was there any reason why you didn't
14   provide a final report?
15             MR. BERBERICH:  Yes, Your Honor.  After the --
16             THE COURT:  Were you still getting documents or
17   not getting documents?
18             MR. BERBERICH:  We were doing active discovery
19   heavily in February, March, April, May and June.
20             THE COURT:  Of this year?
21             MR. BERBERICH:  Of this year, right.
22             THE COURT:  What kind of discovery?
23             MR. BERBERICH:  Oh, not so much --
24             THE COURT:  Depositions or documents?
25             MR. BERBERICH:  Not so much documentary, but
```

```
 1   was provided a year ago.
 2            I didn't hear there were documents missing until
 3   the time that they filed their reply brief in support of
 4   the motion to designate an additional expert.
 5            THE COURT:  And I guess what you're saying is
 6   that you didn't realize there were missing documents until
 7   you took depositions and understood the significance of
 8   some of the documents you had, and then you realized there
 9   were other documents you needed.
10            MR. STATMAN:  There were two issues on that
11   point.  Issue one is they just said that they tried to
12   piece together what they could, but they never clearly
13   responded and said "We lost all these documents back then."
14   That's number one.  Number two --
15            THE COURT:  Do you agree with that?
16            MS. MCNELLIE:  That we didn't tell them at the
17   time that there --
18            THE COURT:  That month.
19            MS. MCNELLIE:  That's right.  We provided the
20   reports in lieu of the records that were missing.
21            MR. STATMAN:  So that's one.  And number two is
22   our expert opinion, as an accountant for the dealership, is
23   based on the accounting records of the dealership.  Unlike
24   a typical case between some businesses and financial
25   damages where people have to actually exchange these
```

```
 1  documents through discovery, Ford, on a monthly basis, has
 2  a very significant detailed form that we must disclose
 3  everything, including the name of any child we are thinking
 4  of having, on this form.  And it tells line item how many
 5  cars, net profit, gross profit, you know, number of
 6  employees, this, that and the other, overhead calculations,
 7  parts calculations.  They get this every month.  Those are
 8  the financials of the dealership.
 9          They had -- the documents that he relied on are
10  obvious, any documents exchanged in discovery and the
11  financial statements provided to them monthly.
12          The hourly rate, I don't think that's a big deal.
13  You said what's your hourly rate.  $150 an hour.  Is that
14  really a big prediscovery question?  I just don't know see
15  how that prevents a deposition.
16          But the bigger issue is they chose all these
17  months to never ask to depose him and never sent us letters
18  complaining that the preliminary disclosure wasn't
19  adequate.
20          MS. MCNELLIE:  That's not true.  I have the
21  letter.
22          THE COURT:  That's what I wanted to know.
23          MR. BERBERICH:  And they filed --
24          THE COURT:  Wait.  Wait.  You cannot all talk at
25  the same time.
```

```
 1          That report they keep referring to, the
 2  preliminary report of Mr. Bean, is very skeletal.  And it
 3  didn't meet the requirements then, and nobody argues that
 4  it met Rule 26.  It became moot because he gave him so much
 5  more time.  So here we are faced with having to re-rack it
 6  and do it for another year or six months or eight months
 7  and incur all the expenses associated with it when,
 8  presumably, the reason it hasn't been done is that this
 9  evidence doesn't exist, and we ought to just go forward as
10  it lays.
11          MR. BERBERICH:  Your Honor, my only response is,
12  if this was an issue on January 2nd like they're saying and
13  they couldn't go forward, we have a 16-page report from
14  Dr. Schmitz which fairly well addresses each item that was
15  raised in Roger Bean's report.  And why did they go through
16  six months of heavy discovery?  I mean, we have done almost
17  all the traveling and the depositions and everything else.
18  If this was going to be a nonstarter on January 2nd, then
19  why wait until we get done with six months of discovery?
20          Because it's the same issue in a different light
21  in their summary judgment motion is they're saying we don't
22  have an expert.  We're saying that we even have lay witness
23  testimony that clearly spells out what our damages are.
24          But, you know, the bottom line is that we have
25  disclosed Mr. Bean's preliminary report.  His opinions are
```

```
 1   footnoted.  It shows how he does the math.  You know, it's
 2   a couple of pages, and it shows how he does the math as to
 3   most of those items.  The information he's basing it on is
 4   something that Ford gets every month, and it's the same
 5   information that Mr. Schmitz was -- Dr. Schmitz -- excuse
 6   me -- was able to evaluate and piece together his own
 7   opposition.
 8           THE COURT:  Let me ask you this.  If the Court
 9   set a new deadline of January 2nd, what was the old
10   deadline?
11           MR. BERBERICH:  September, I think, something.
12           MS. MCNELLIE:  I believe it was before that.  It
13   was earlier.  It was in the summer.
14           THE COURT:  Than you found that you couldn't
15   comply.  Then the appropriate thing to do at that point was
16   to move the Court for an extension of time of the expert
17   deadline.  You didn't do that.
18           MR. BERBERICH:  Your Honor, we provided -- again,
19   at that time, we provided an opinion that followed through
20   up to the date that it was made.  Because, like, for
21   instance, Mr. Bean's supplemental opinion would simply
22   update the numbers, because more time has passed from the
23   date he rendered his preliminary report until now.  So we
24   would simply update some numbers.  The math that he's going
25   through is the same math that he provided in his
```