in improvements to Honda East's sales and service facility, presumably to meet criteria of Honda Motors of America. Mr. Bean intends to testify that this expense is an element of Eastside Lincoln Mercury's damage, espousing the theory that Honda East would have relocated to Eastside Lincoln Mercury's facility if only Eastside Lincoln Mercury had been permitted to "dual" with Beechmont Chevrolet and that Honda's East $1,000,000 investment in its current facility was therefore unnecessary. Bean Damage Report, at 7-8.

        d.        **Legal Opinions Regarding The Operation of Franchise Laws**

Mr. Bean's Final Report also contains the following opinion regarding the purpose of dealer franchise laws:

> The franchise agreement and franchise laws provide a level playing field among competitors to create a partnership between the franchisor, Ford in this case and its dealer.

Bean Damages Report at 11, para. 1.

Mr. Bean is absolutely and completely unqualified to offer any opinion concerning the operation or purpose of dealer franchise laws, and as a matter of law his explanation of the purpose and operation of dealer franchise laws is incorrect. Any testimony on this subject from Mr. Bean can only confuse the jury.

        e.        **The Written Text Of Mr. Bean's Final Report Should Not Be Shown To The Jury.**

The textual portion of Mr. Bean's Final Report is so imbued with improper opinions, declarations, speculation, and hearsay that it should be excluded in its entirety.

**B.    Exclusion of Testimony Regarding Alleged Competitive Advantage Gained By Ownership of Multiple Dealerships.**

Eastside will also attempt to introduce evidence relating to an alleged competitive advantage that the dealerships owned by Mr. Reichert have over the Eastside dealership and the

alleged impact on the value of Eastside – simply because there are three dealerships owned by Mr. Reichert (through separate corporate entities) and only one owned by Mr. Woeste in the Cincinnati market. Although Ford denies any competitive advantage or impact on the value of Eastside's dealership simply by virtue of Mr. Reichert's joint ownership, any testimony and evidence of such an advantage or the alleged impact on the value of Eastside as a result of this multiple ownership is not relevant to the any of Eastside's claims and would likely be unduly prejudicial to the Ford Defendants.

Simply put, Eastside has no cause of action relating to Ford's decision to award another franchise to Mr. Reichert. Eastside has no contractual right to control who owns other Lincoln Mercury stores or how many of them. Neither of the statutes at issue in this case limit the entity or entities to which a manufacturer may choose to confer its franchise agreements. Therefore, the mere fact that Mr. Reichert owns three of the Lincoln Mercury dealerships in the market and that Eastside believes that it has been placed at a competitive disadvantage or is worth less as a result is not relevant to any of the claims that Eastside has asserted.

Conversely, the introduction of this testimony would be unduly prejudicial to Ford since evidence of these alleged damages that are not recoverable under any claim in Eastside's case could only at best confuse, or at worst, inflame the jury. For these reasons, under Fed.R.Evid. 402 and 403, the Ford Defendants are entitled to an order in limine preventing Eastside from presenting any testimony or other evidence of any alleged competitive advantage or decrease in value of its dealership because of the ownership of multiple dealerships in the market by Mr. Reichert.

### C. No Presumption of Allocation Irregularities

Eastside has asserted that it should be entitled to some type of presumption regarding its "allocation" allegations because of the alleged inability of Ford to produce records allegedly critical to those claims. The information, however, is not "critical" to Eastside's claim, nor was not destroyed in anticipation of litigation. As such, Eastside is not entitled to any relief.

The electronic information that reflected the allocation and the manner in which allocation was determined was set to be captured under a new archiving program. Unfortunately, this archiving function failed and the information was not captured for the period in question for the entire United States. As a result, for purposes of considering some type of "spoliation" allegation, no documents were "destroyed." Additionally, this systems error occurred over a year before the Complaint was filed or even threatened. Therefore, the elements of spoliation cannot be met and the idea of a discovery sanction is neither warranted nor appropriate. *Smith v. Howard Johnson Co.*, 67 Ohio St. 3d 28, 29 (1993).

In addition, this information, even if it had been captured, is not critical to Eastside's claims. In order to understand Eastside's request, the term allocation must first be explained. Allocation is the means by which a manufacturer assigns to dealerships numbers of vehicles yet to be built that the dealership may order for purchase. "Allocation" does not limit the number of vehicles that a dealership may order unless the manufacturer cannot produce enough of that type of vehicle to meet demand. As a result, the propriety of the means of assigning an allocation to each dealer only becomes relevant when vehicles are in short supply. When vehicles are not in short supply, the number of vehicles a dealership is allocated is not relevant, since the dealership could order additional vehicles if it wished them. A dealership's allocation, therefore, does not reflect the number of vehicles that a dealership actually receives since a dealership may order

23

more than its allocation if vehicles are available, or may choose not to order all of its allocation, even if the vehicles are scarce.

Eastside has been given records that show the *actual production and release date of vehicles during the relevant period*. From the information provided, Eastside can determine all of the vehicles that were built for it and for all other Lincoln Mercury dealerships in the Cincinnati market. It can also determine the release dates for each of those vehicles. Eastside, therefore, can do a full comparison of the number of vehicles that it received versus the number Mr. Reichert's stores received. Since the parties know the actual number of vehicles built and released for each dealership, the manner by which Ford set allocation figures is not "critical" to Eastside's claims.[4]

### D.   Exclusion of Anonymous Phone Call[5]

Eastside is expected to try to introduce testimony concerning an anonymous telephone call received by Mr. Woeste, Eastside's dealer principal. This call "tipped" Mr. Woeste that Mr. Reichert's dealerships had allegedly received marketing funds that had not been equally made available to Eastside. Because the call is hearsay and because any probative value is substantially outweighed by its prejudicial impact, any mention of the anonymous phone call to Mr. Woeste should be excluded.

Under Fed.R.Evid. 802, hearsay is not admissible except as otherwise provided under the rules. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The anonymous statements that Eastside may seek to introduce are by definition statements

---

[4] Eastside also makes an allegation that new model year vehicles were delivered more slowly to it at initial introduction to the market. This is not a true "allocation" claim and the information relating to setting allocation would not demonstrate any disparity in delivery times. Therefore, the information that cannot be recreated would not be relevant to that claim, either.

made by someone other than the declarant while testifying at the trial. *See Miles v. Burris*, 54 F.3d 284, 288 (7th Cir. 1995) (testimony about the content of an anonymous tip is hearsay).

Because the phone call Mr. Woeste received was anonymous, neither Eastside nor any of the Defendants know who made the call. Because there is no way to know who made the call, Eastside does not and cannot claim that the statements are not hearsay because they were made by a party-opponent. Moreover, Eastside has no reason to mention the anonymous call other than to prove the truth of the matter asserted. Therefore, any testimony about this alleged anonymous telephone call should be excluded.

In addition, under Fed.R.Evid. 403, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." It is clear that in this case, any probative value is substantially outweighed by the unfair prejudice to Ford. This call was anonymous. Eastside has no way of knowing who placed the call, why it was placed or whether the speaker was someone with knowledge or simply a prankster.

The "tip" provided by the anonymous informant is unreliable and prejudicial at best. Even if relevant, the probative value of the tip is minimal, and is outweighed by its unfair prejudice to Ford. Under Fed.R.Evid. 403, therefore, an order in limine should be granted in order to prevent mention of this call at trial.

## VII. INSTRUCTIONS AND SPECIAL VERDICT

The parties exchanged proposed jury instructions and jury interrogatories. While the parties were able to agree on some of the jury instructions, they were not able to agree on any of the jury interrogatories. Attached are the Ford Defendants' proposed jury instructions and jury interrogatories. To the extent that the jury instructions are *not* agreed to by the parties, the

---

[5] This same analysis applies to anonymous letters received by Eastside's counsel after the filing of this action. Any attempt to introduce or refer to those letters must also be excluded.

instructions are in italics. Otherwise, the parties have agreed and the jury instructions are not in dispute. For the reasons that follow, the Court should adopt the Ford Defendants' proposed jury instructions for the remaining issues and proposed jury interrogatories for all of Eastside's claims.

### A. Breach of Contract Jury Instructions

Eastside seeks a jury instruction for lost profits for its breach of contract claim. The Ford Defendants oppose the instruction. Eastside has never alleged, nor is there any evidence to support, a lost profit damages theory under Eastside's breach of contract claim. A lost profits instruction, therefore, would be confusing to the jury since it is not an issue in this case.

Eastside's counsel has indicated that he intends to move the Court to amend the complaint and add a claim for breach of contract that includes a lost profit damages component. The Ford Defendants oppose any request by Eastside to amend the complaint. Moreover, since Eastside has not actually moved the Court to amend the complaint, inclusion of a lost profits jury instruction at this time is improper.

### B. The Ohio Motor Vehicle Dealer Act and Dealer's Day in Court Act Jury Instructions

There are no standard jury instructions for the Ohio Motor Vehicle Dealer Act and minimal standard instructions for the Dealer's Day in Court Act. The parties each drafted their own proposed instructions for those claims, but were unable to agree. The Court should adopt the Ford Defendants' proposed jury instructions.

The Ford Defendants' jury instructions are a more accurate recitation of the law, while Eastside's jury instructions ignore key legal elements. For example, the good faith requirement of the Ohio Motor Vehicle Dealer Act requires a dealer to show that a manufacturer's conduct was "commercially unjustified." *Jim White Agency Co.*, 126 F.3d at 834. Eastside's proposed

jury instruction fails to even mention that requirement. Similarly, the Dealer's Day in Court Act requires that a dealer prove coercion, intimidation or threats of coercion or intimidation. *Fray Chevrolet Sales, Inc.*, 536 F.2d at 685. Eastside's proposed instruction also ignores that requirement. Furthermore, Ford intends to argue at trial that it did not violate either statute because it was enforcing its contractual rights against Eastside—a proper defense under both statutes—yet, Eastside's proposed jury instructions fail to state that such a defense exists. *Bill Call Ford, Inc.*, 48 F.3d at 207; *Clifford Jacobs Motors, Inc.*, 357 F. Supp. at 574, n.2.

Additionally, the Court should adopt the Ford Defendants' proposed jury instructions because they will be more easily understood by the jury. The statutes at issue contain complex legal concepts that will be difficult for the jury understand. Eastside's proposed jury instructions, for the most part, only quote the statutes, without any explanation. Specifically, Eastside's proposed instructions fail to define key legal terms and concepts, such as "commercially unjustified" and "discrimination." The Ford Defendants' proposed jury instructions, on the other hand, will be more easily understood by the jury because they explain the statutes in simple terms and provide definitions for key legal concepts.

There are other reasons the Court should adopt the Ford Defendants proposed jury instructions and not Eastside's. Eastside's proposed jury instructions also fail to state the factual basis for its claims under the Ohio Motor Vehicle Dealer Act and the Dealer's Day in Court Act. For instance, Eastside's proposed jury instruction for the Dealer's Day in Court Act does not state the factual bases upon which Plaintiff claims that Ford violated the statute. Any jury

instruction used by the Court should clearly identify the factual basis for Eastside's claims, so that the jury can apply the facts to the applicable law and reach a fair decision.[6]

Finally, Ford objects to Eastside's use of the term "franchise" to explain the contractual relationship between Ford and Eastside. Eastside seeks to use the term "franchise," so that it can argue that Ford violated some unidentified oral franchise agreement between the parties. Eastside should not be permitted to make that argument to the jury because oral agreements cannot form the basis of a Dealer's Day in Court Act claim. *Frank Chevrolet Co. v. General Motors Corp.*, 304 F. Supp 307, 315 (S.D. Ohio 1968). Moreover, the Lincoln and Mercury Sales and Service Agreements between Ford and Eastside contain integration clauses, which preclude Eastside from arguing that there are any oral franchise agreements between the parties. Sales and Service Agreements at ¶26. The Court should instead follow the language used in the Ford Defendants' proposed jury instructions, and refer only to the "Sales and Service Agreements" between Ford and Eastside, as those can be the only contracts at issue.

C.    **Fraud Jury Instructions**

The Ford Defendants object to Eastside's definition of "malice" that includes a reference to "a conscious disregard for the rights and safety of other persons having a great probability of causing substantial harm[.]" This case does not involve an alleged conscious disregard by the Ford Defendants for the rights and safety of Eastside. As a result, it would be unfairly prejudicial to the Ford Defendants to charge the jury with that instruction.

The Ford Defendants also object to Eastside's jury instruction that "where one is employed to give advice on matters within the scope of his professional capacity, he commits

---

[6] The Ford Defendants' proposed jury instructions also speak in general terms, but that is because the factual basis for Eastside's claims are unclear. Ford reserves the right to modify its proposed jury instructions to reflect the factual basis for Eastside's claims, once they become clear.

28

fraud if he expresses an opinion which he knows to be false or which he gives with utter disregard and recklessness to its falsity." There is no allegation in the complaint, or evidence to support an allegation, that the Ford Defendants were employed in their professional capacity to give advice to Eastside.

Eastside objects to the Ford's Defendants' proposed jury instruction identifying when a party has a duty to speak under Ohio fraud law. Eastside, however, failed to offer any counter jury instruction. An instruction on when a party has a duty to speak is necessary because the Ford Defendants intend to argue that they had no duty to speak in this case. Moreover, Eastside has not and cannot argue that the Ford Defendants' jury instruction is an inaccurate recitation of law. Accordingly, the Court should adopt the Ford Defendants' proposed jury instruction or a similar instruction explaining when a party has a legal duty to speak.

Eastside also objects to the Ford Defendants' proposed jury instruction that fraud is not presumed. Ford's instruction, however, is an accurate statement of the law and the jury should be instructed accordingly. *Watkins v. The Cleveland Clinic Found.*, 130 Ohio App. 3d 262, 278 (Cuyahoga Cty. 1998) ("[f]raud is never presumed[.]") Indeed, the Sixth Circuit has affirmed the use of the *same instruction* because it accurately states the law. *Paul v. Aetna Cas. & Sur. Co.*, 831 F.2d 1064, 1064 (6th Cir. 1987) (affirming use of identical jury instruction).

### D.  Civil Conspiracy Jury Instructions

The Ford Defendants request jury instructions defining the terms "malicious combination" and "underlying unlawful act." Eastside opposes both instructions, claiming that they are unnecessary. The instructions are necessary, however, because the jury is not likely to understand those legal concept without some explanation by the Court, which creates a risk of unfair prejudice to the defendants. Moreover, the Ford Defendants' proposed instructions are

29

accurate statements of law, a fact that Eastside has not and cannot dispute. Accordingly, the Court should adopt the Ford Defendants' proposed jury instructions, or similar instructions.

The Ford Defendants also object to Eastside's request for a general conspiracy instruction that does not reference fraud. The only remaining claim upon which Eastside's fraud claim can be predicated is fraud; thus, the jury instruction should specifically reference that claim. To the extent that Eastside hopes to revive its intentional interference claim, which was dismissed by the Court on summary judgment, and predicate conspiracy upon that claim, the Court should deny that request. There is no evidence that the Court erred by dismissing Eastside's claim for intentional interference and there is no basis for reviving that claim.

### E.   Jury Interrogatories

Pursuant to Fed.Civ.R. 49(B), the Ford Defendants request that the Court issue jury interrogatories on each element of each claim by Eastside. This is a complex case involving numerous claims with numerous elements for each claim. Indeed, Eastside is presently asserting a claim for breach of contract, violation of the Dealer's Day in Court Act, claims for eight different violations of the Ohio Motor Vehicle Act, twenty separate alleged instances of fraud,[7] and civil conspiracy against all of the defendants. Eastside also seeks over $15,000,000 in damages. Jury interrogatories that address each of the elements of Eastside's claims will help ensure that the jury understands and follows the law. And while the decision to use jury interrogatories is within the discretion of the Court, a number of Courts have recognized their importance in complex cases such as this one. *See, e.g., Jamison Co., Inc. v. Westvaco Corp.,*

---

[7] The Ford Defendants' proposed jury interrogatories include only one set of interrogatories for fraud, even though Eastside is presently asserting twenty separate fraud claims. The Ford Defendants expect, and Eastside's counsel has stated, that all twenty claims are not likely to go to the jury. Accordingly, the Ford Defendants request a separate set of jury interrogatories for each fraud claim that goes to the jury. Each set of interrogatories will be almost identical to the set attached hereto.

526 F.2d 922, 935 (5th Cir. 1976) ("In a complicated case such as this, the special interrogatory device localizes and focalizes the specific problems and issues whereas a general verdict often permits improper jury meandering at trial and presents impossible matching efforts on appeal.")

The Ford Defendants also object to Eastside's proposed jury interrogatory relating to Ford's refusal to allow Eastside to relocate its dealership. As set forth above, those acts only occurred recently, and fall outside the scope of the allegations in the Complaint. Furthermore, the proposed interrogatory is requesting that the jury find that Ford's refusal to allow Eastside to relocate is improper as a matter of law. Basically, Eastside is seeking a declaratory judgment or some type of injunctive relief from the jury. Aside from the obvious impropriety of granting the implied requested relief, only the Court, not the jury, can issue a declaratory judgment or an injunction. Consequently, the Court should not charge the jury with Eastside's proposed interrogatory.

Respectfully submitted,

Elizabeth A. McNellie (0046534)
Baker & Hostetler LLP
65 East State Street, Suite 2100
Columbus, Ohio 43215
(614) 228-1541

Trial Attorney for Defendants
Ford Motor Company, Jerry Carter, and A.W. Walls

OF COUNSEL:

George W. Hairston (0030507)
K. Issac deVyver (0072633)
John J. Frost (0077003)
Baker & Hostetler LLP
65 East State Street, Suite 2100
Columbus, Ohio 43215
(614) 228-1541
(614) 462-2616 (fax)

## CERTIFICATE OF SERVICE

A copy of the foregoing Ford Defendants' Final Pretrial Memorandum were mailed to Alan J. Statman, Esq., and Gregory J. Berberich, Esq., STATMAN, HARRIS, SIEGEL & EYRICH, LLC, 2900 Chemed Center, 255 East Fifth Street, Cincinnati, Ohio 45202, counsel for plaintiffs, and Steven D. Hengehold, Esq., and James J. Englert, Esq., RENDIGS, FRY, KIELY & DENNIS, LLP, 900 Fourth & Vine Tower, Five West Fourth Street, Cincinnati, Ohio 45202, counsel for defendants Robert C. Reichert and Kenwood Dealer Group, Inc., by regular U.S. mail, postage prepaid, and sent electronically to these same individuals, this 1st day of November, 2004.

Elizabeth A. McNellie