# EXHIBIT A

LEXSEE 2001 OHIO APP. LEXIS 2862

Halleen Chevrolet, Inc. et al., Appellants-Appellants, v. General Motors Corporation et al., Appellees-Appellees.

No. 00AP-1454

COURT OF APPEALS OF OHIO, TENTH APPELLATE DISTRICT, FRANKLIN COUNTY

2001 Ohio App. LEXIS 2862

June 28, 2001, Rendered

**SUBSEQUENT HISTORY:** [*1] Writ of certiorari denied: *Halleen Chevrolet, Inc. v. GMC, 2002 U.S. LEXIS 3604* (U.S. May 20, 2002).

**PRIOR HISTORY:** APPEAL from the Franklin County Court of Common Pleas.

**DISPOSITION:** Affirmed.

**LexisNexis(R) Headnotes**

**COUNSEL:** Morganstern, MacAdams & DeVito Co., L.P.A., Stanley Morganstern and Christopher M. DeVito, for appellants.

Jones, Day, Reavis & Pogue, Jeffrey J. Jones and Douglas M. Mansfield; Joseph L. Lines, III, for appellee General Motors Corporation.

Chester, Willcox & Saxbe, and Stephen C. Fitch, for appellee Fairchild Chevrolet.

**JUDGES:** BROWN, J., LAZARUS and TYACK, JJ., concur.

**OPINIONBY:** BROWN

**OPINION:**

(REGULAR CALENDAR)

BROWN, J.

Appellants, Halleen Chevrolet, Inc., and Charles Halleen (collectively referred to as "Halleen"), appeal the judgment of the Franklin County Court of Common Pleas affirming the order of the Motor Vehicle Dealers Board of Ohio ("MVDB" or "the board") to permit appellees, General Motors Corporation ("GM"), to relocate Fairchild Chevrolet ("Fairchild").

Before a franchisor such as GM may relocate an existing new automobile dealer, it first must give written notice of such intent to each franchisee of the same line-make of vehicle in the relevant market area ("RMA"), an area within a ten-mile radius from the site of the proposed relocated existing dealer. On January 23, 1997, GM gave [*2] Halleen and other RMA dealers Notice of Intent to Relocate Fairchild from Detroit Road in Lakewood, Ohio, to the intersection of Detroit and Columbia Roads in Westlake, Ohio. Halleen filed a protest, pursuant to *R.C. 4517.50(A)*.

On July 6, 1998, a hearing commenced before a hearing examiner for the MVDB. Voluminous evidence was presented over the course of the ten-day trial. James A. Anderson testified as an expert witness on behalf of GM. Halleen presented the testimony of expert witnesses Professors John Matthews and Norman Krumholz. Several other lay witnesses testified. After eight months, the original hearing examiner failed to issue a recommendation and the MVDB reassigned the case to another hearing examiner over the objection of Halleen.

A one-day hearing was held before the second hearing examiner, at which counsel for the respective parties presented arguments and the examiner inspected the dealership sites. On October 20, 1999, the hearing examiner issued a recommendation, including findings of fact and conclusions of law, in which he determined that good cause existed to permit Fairchild to relocate. Halleen filed objections to the hearing examiner's [*3]

decision, but the MVDB declined to further consider the matter and adopted and approved the hearing examiner's decision.

On December 8, 1999, Halleen appealed to the Franklin County Court of Common Pleas asserting five assignments of error. On December 5, 2000, the common pleas court found that there was reliable, probative, and substantial evidence to support the decision of the MVDB and affirmed the MVDB's decision. Halleen appeals this judgment, asserting the following six assignments of error:

Assignment of Error No. I: The Board's *sua sponte* reassignment of Hearing Examiners Without any Explanation and Over Halleens' Objections Violates Appellants' Due Process Rights.

Assignment of Error No. II: Halleen was Denied its Constitutionally Protected Right of Due Process when the Hearing Examiner Proceeded to Make a Recommendation *Without* a Hearing or Review of the Conflicting Oral Expert Evidence.

Assignment of Error No. III: Halleen was Denied its Constitutionally Protected Rights of Due Process when the Ohio Motor Vehicle Dealers Board Failed to Deliberate or Review the Hearing Examiner's Proposed Findings.

Assignment of Error No. IV: The Hearing Examiner's [*4] Recommendation is Contrary to the Ohio Motor Vehicle Dealer Board and Other States' Public Policy.

Assignment of Error No. V: The Hearing Examiner's Recommendations Failed to Apply the Relevant Market Area Analysis as Required by *R.C. § § 4517.51* and *4517.01(DD)*.

Assignment of Error No. VI: The Hearing Examiner's Adoption *in toto* of GM's Proposed Findings of Fact and Conclusions of Law was not Supported by Reliable, Probative and Substantial Evidence and in Accordance with Law.

The standard of review for the court of common pleas in administrative matters is given in *R.C. 119.12*, which states in part:

The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

The standard of review for [*5] appellate courts is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative, and substantial evidence. *Crowe v. State Bd. of Edn.*, 1999 Ohio App. LEXIS 4993 (Oct. 26, 1999), Franklin App. No. 99AP-78, unreported, quoting *Samson v. State Bd. of Edn.*, 1998 Ohio App. LEXIS 3750 (Aug. 13, 1998), Franklin App. No. 97APE12-1702, unreported. Further:

In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion *** implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. *** Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. ***

The fact that the court of appeals *** might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those [*6] of an administrative agency or a trial court absent the approved criteria for doing so. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St. 3d 705, 707, 590 N.E.2d 1240, quoting *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St. 3d 257, 260-261, 533 N.E.2d 264. (Citations omitted.)

Having set forth the appropriate standard of review, we now address Halleen's assignments of error. Halleen asserts in its first assignment of error that the MVDB's *sua sponte* reassignment of a new hearing examiner, after the hearing and without any explanation, violated Halleen's due process rights. However, this argument regarding the method of transfer was raised neither in the objections to the MVDB nor the appeal to the common pleas court, and the trial court did not address it. Halleen's failure to raise such argument before the common pleas court and administrative agency constitutes a waiver of his right to assert it for the first time on appeal to this court. See *State ex rel. Zollner v. Indus. Comm.* (1993), 66 Ohio St. 3d 276, 278, 611 N.E.2d 830; *Morgan v. Girard City School Dist. Bd. of Edn.* (1993), 90 Ohio App. 3d 627, 631, 630 N.E.2d 71; [*7] *D & D Investment v. Franklin Cty. Bd. of Zoning Appeals*, 1998 Ohio App. LEXIS 6374 (Dec. 29, 1998), Franklin App. No. 97APD11-1479, unreported.

Accordingly, Halleen's first assignment of error is overruled.

Halleen argues in its second assignment of error that the MVDB denied it due process when the second hearing examiner proceeded to make a recommendation without a hearing or a review of the conflicting oral expert evidence. The trial court found the substitution of hearing examiners did not violate any due process or equal protection rights, citing several cases, including *Laughlin v. Pub. Util. Comm.* (1996), 6 Ohio St. 2d 110, 216 N.E.2d 60, and *Ritchie Photographic v. Limbach* (1994), 71 Ohio St. 3d 440, 644 N.E.2d 312. In *Laughlin*, the Ohio Supreme Court found it was not essential that a person who hears the evidence in an administrative proceeding also prepares the findings and recommendations if that same person reviews and examines the record of the proceeding. In *Ritchie*, citing *Laughlin*, the Ohio Supreme Court also found the administrative board did not deny the parties due process by replacing the attorney-examiner who had conducted the evidentiary [*8] hearing with another attorney-examiner who made a determination based upon a "cold record."

Halleen contends that *Laughlin* and *Ritchie* are distinguishable from the present case because neither involved disputes as to the credibility of witnesses and both were based entirely upon a question of law. However, neither *Laughlin* nor *Ritchie* specifically limited their respective holdings to situations where only legal questions are involved, or where credibility is not at issue.

Even if Halleen's view of the underlying circumstances in *Laughlin* and *Ritchie* were true, we do not find the present case distinguishable from those cases. In support of its contention that the expert witnesses' credibility was at issue in the present case, Halleen cites the common pleas court's statement that the hearing examiner "weighed the voluminous evidence" and "had to weigh a substantial amount of conflicting evidence presented primarily through the parties' expert witnesses." Halleen also cites the common pleas court's statement that the parties' experts disagreed on almost every one of the non-exclusive statutory factors. These three citations to the trial court's decision are [*9] the only argument put forth by Halleen to demonstrate that credibility was at issue.

However, the statements by the common pleas court regarding the "weighing" of evidence only points out the existence of conflicting evidence and does not comment on or acknowledge any credibility issues. That the experts disagreed on nearly all of the statutory factors also does not point to any issues of credibility. To the contrary, the hearing before the hearing examiner consisted largely of undisputed data and statistics and each expert's analysis and interpretation of such data. We agree with GM's view that this is not a case where one witness was "lying" and one was being "truthful," which would require the weighing of witness demeanor and veracity. Apart from the citations to the common pleas court's decision, Halleen fails to point to any specific instances in the record where witness credibility was at issue. The second hearing examiner agreed that he would hear any additional evidence to resolve questions of demeanor or honesty, but after reviewing the evidentiary record, he found that such was not necessary.

This court addressed the same issue raised in this assignment of error in *In re Christian Care Home of Cincinnati, Inc.* (1991), 74 Ohio App. 3d 453, 599 N.E.2d 342 [*10] and *Kremer v. State Med. Bd.*, 1996 Ohio App. LEXIS 949 (1996), Franklin App. No. 95APE09-1247, unreported. The common pleas court in the present case cited both favorably and analyzed our holding in both cases. Although Halleen failed to address these two cases in its merit brief, it did mention them in its reply brief, but only to state that these cases were distinguishable because they also did not involve determinations of demeanor and credibility. However, as with *Laughlin* and *Ritchie*, neither *Kremer* nor *Christian Care* limited their holdings to cases involving only questions of law. Indeed, in *Christian Care*, Christian Care specifically argued that upon remand, the original hearing examiner should have been appointed to consider additional testimony and a modified certificate of need application because only the initial examiner had the opportunity to observe the demeanor of the witnesses. However, we found in *Christian Care* that the appointment of a new hearing examiner met due process requirements even though the new hearing examiner did not observe the witnesses and issued recommendations based only on a review and analysis of the record. We find both *Kremer* and *Christian* [*11] *Care* persuasive.

Halleen points to cases from myriad other jurisdictions outside of Ohio for several related propositions, but it fails to cite any Ohio law to support these same propositions. Given our analysis above, the cases on point from the Ohio Supreme Court and this court, and Halleen's failure to point to any persuasive Ohio law to the contrary, we find these determinations by other jurisdictions to be unpersuasive.

Halleen also points to *R.C. 4517.57(A)* and *119.09* to support its argument that the same hearing examiner who conducts the hearing must also issue the findings and recommendations to the board. We disagree. *R.C. 4517.57(A)* requires that the board appoint a hearing officer to hear and consider the oral and documented evidence and issue findings and recommendations to the board. As the trial court similarly noted, we read the term

"hearing officer" as used in this provision, to refer to the generic legal capacity or title of the position, rather than as a requirement that the hearing officer be one person or a specific individual. If the legislature had intended this provision to require the specific limitation [*12] propounded by Halleen, it could have simply stated so. Likewise, R.C. 119.09 similarly states that the administrative agency may appoint an examiner to conduct a hearing, and the examiner shall submit findings of fact, conclusions of law, and make recommendations to the agency. Again, this provision refers to the generic legal capacity of an "examiner." See *Christian Care, supra, at 461* ("We may not interpret R.C. 119.09 in such a manner as to expand the intent expressed therein by the General Assembly"). Therefore, we find these statutes do not stand for the proposition urged by Halleen. Accordingly, Halleen's second assignment of error is overruled.

Halleen argues in its third assignment of error that it was denied due process when the board refused to deliberate or review the hearing examiner's proposed findings after Halleen filed objections to the hearing examiner's decision. After the MVDB failed to act within thirty days of the filing of the hearing examiner's recommendations and declined "to further deliberate on this matter," the recommendations and decision of the examiner were automatically approved. R.C. 4517.58 [*13] specifically permits automatic approval "if the board fails to act within thirty days after the board receives a proposed decision from the hearing officer or within any longer period mutually agreed upon by the parties, the proposed decision shall be considered approved." Moreover, Halleen fails to address the trial court's reliance upon *Bob Daniels Buick Co. v. Gen. Motors Corp.*, 1998 Ohio App. LEXIS 4862 (Oct. 13, 1998), Franklin App. No. 97APE12-1701, unreported. In *Bob Daniels*, we found that the MVDB acted in accord with R.C. 4517.57(D) and 4517.58, by allowing the hearing officer's recommendation to be automatically approved by operation of law when the board's inability to attain a majority vote precluded them from acting on the recommendation. We further stated that "automatic adoption provisions satisfy due process requirements if the party with the claim of entitlement had the opportunity for a meaningful hearing and consideration of its claim, and the decision adopted by operation of law is consistent with the factual determinations made during the administrative proceeding." *Id.* In the present case, Halleen had a meaningful hearing and consideration of its claim. [*14] The examiner made factual considerations based upon evidence and testimony presented at the administrative proceeding.

Further, although Halleen cites *In re Cleveland Clinic Found.* (1994), 94 Ohio App. 3d 348, 640 N.E.2d 900, to support its argument that the board's failure to grant a hearing on its objections denied it due process, we already declined to follow that case in *Bob Daniels*, which had similar underlying circumstances as the present case. Further, the statute in *Cleveland Clinic* required "deliberation" of the hearing examiner's decision by the Certificate of Need Review Board. In the present case, R.C. 4517.58 has no such requirement and provides for automatic adoption if no action is taken by the board. Thus, because R.C. 4517.58 allows automatic adoption of a hearing examiner's recommendations, the MVDB did not violate Halleen's due process rights by automatically approving the recommendations without further "deliberation." Therefore, Halleen's third assignment of error is overruled.

In its fifth assignment of error, Halleen argues the hearing examiner's recommendation failed to analyze the [*15] entire RMA as required by R.C. 4517.51 and 4517.01(DD), because it only took into consideration individual Area of Geographic Sales and Service Advantage ("AGSSA"). Chevrolet assigns each Chevrolet dealer in a Multiple Dealer Area ("MDA"), such as Cleveland, an AGSSA. Each AGSSA consists of census tracts closest to the dealer's location in terms of geographic distance. The AGSSA to be assigned to the proposed Fairchild dealership is AGSSA 3.

Halleen cites to *Douglas Bigelow Chevrolet, Inc. v. Gen. Motors Corp.* (2000), 138 Ohio App. 3d 841, 742 N.E.2d 702, for the proposition that the hearing examiner is required to analyze the entire RMA and not just the AGSSA. In *Bigelow*, we found that R.C. 4517.51 "clearly requires a consideration of the dealers in the RMA and it cannot be read to permit an analysis of only a small portion of the RMA." 138 Ohio App. 3d at 846. Thus, we found that GM's expert could not rely only upon the individual AGSSA. Consequently, we reversed the common pleas court's finding that the hearing officer's conclusions were supported by substantive, reliable, and probative evidence, and remanded [*16] the matter to consider the entire RMA.

In the present case, Halleen fails to address the common pleas court's finding on this issue or give any explanation as to how the common pleas court abused its discretion in finding *Bigelow* inapposite. See *Crowe, supra*. We agree with the common pleas court's analysis and do not find it abused its discretion. Before the MVDB, GM's expert presented data as to Chevrolet's penetration performance in the entire RMA over a period of several years; population and household counts and retail growth in the RMA; census tracts in the RMA; new vehicle registration patters in the RMA; opportunity per dealer in the RMA; the location of Chevrolet dealers in the RMA; competition within the RMA; customer convenience levels in the RMA; and lost sales

opportunities within the RMA. As the common pleas court found, the hearing examiner's decision indicates that he focused his analysis on the proper geographic area, the RMA. The examiner's decision reflected this data, and the examiner specifically analyzed the entire RMA throughout his decision, including findings 6, 13, 16, 38, 39, 56, 58, 62, 65, 66, 69, 70, 71, 72, 73, 80, 81, 82, and conclusions B, D, [*17] and E.

Thus, we find *Bigelow* and the present case distinguishable. Unlike *Bigelow*, in the present case, the hearing examiner's conclusions were not expressly limited to a "significant portion" of the RMA; neither GM's expert nor the hearing officer only "tangentially" addressed the entire RMA; GM's expert did not testify that he had numbers to analyze the entire RMA but "chose not to do so"; and GM's expert and the hearing examiner cited penetration and competition statistics for the whole RMA, not just the AGSSA. Further, that the hearing examiner discussed AGSSA 3 in his findings, in addition to the RMA, is not fatal to his analysis and ultimate determination. As we pointed out in *Bigelow*, "the RMA may be broken down into smaller areas for analytical purposes ***." *Id.* For the foregoing reasons, we find Halleen's argument not well-taken, and overrule its fifth assignment of error.

In its sixth assignment of error, Halleen asserts the hearing examiner's adoption of GM's proposed findings of fact and conclusions of law were not supported by reliable, probative, and substantial evidence. *R.C. 4517.50(B)* provides that the franchisor may not [*18] relocate a dealer if the MVDB determines that good cause exists for not permitting the dealer to relocate. The franchisor has the burden to establish that good cause exists to relocate a dealer. *R.C. 4517.57(C)*. In determining whether good cause exists, *R.C. 4517.51* requires the MVDB to consider the existing circumstances, which include, but are not limited to, the following:

(A) The effect of an additional or relocated dealer upon the existing new motor vehicle dealer of the same line-make in the relevant market area to be served by the additional franchisee or relocated dealer;

(B) Whether it is injurious or beneficial to the public interest for the dealer to be established or relocated;

(C) Whether the franchisees of the same line-make in the relevant market area are:

(1) Providing adequate competition and convenient consumer care for the motor vehicles of the same line-make in the relevant market area, which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of vehicle parts, and qualified sales and service personnel;

(2) Providing adequate market penetration and [*19] representation.

(D) Whether the franchisor has complied with the requirements of this chapter.

At the outset, we note that Halleen's objections to the hearing examiner's recommendations filed with the board related almost exclusively to the procedural issues regarding the appointment of a second hearing examiner. The only mention of the merits in the objections as it relates to the evidence was one sentence in the conclusion, tersely contending that "the Hearing Examiner's Recommendation and findings are contradicted by, inconsistent with and unsupported by competent credible evidence." As stated previously, generally, the failure to raise an argument before the administrative agency constitutes a waiver of the right to assert such argument. See *Morgan, supra.* Notwithstanding, we will address Halleen's arguments.

As noted above, our standard of review is limited to whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative, and substantial evidence. *Crowe, supra.* However, Halleen has attempted to reargue its case in its entirety to this court. Noticeably absent from its argument [*20] before this court is the contradictory evidence cited by the hearing examiner and the common pleas court. There will nary be a case in this area of law that does not contain contradictory evidence and testimony presented by each side on nearly every factor. Indeed, for the arguments Halleen again asserts before us, there was conflicting testimony, interpretations, analysis, and evidence presented by GM and its expert.

As to the factors set forth in *R.C. 4517.51(A), (B), (C),* and *(D),* the hearing officer had to weigh this substantial amount of conflicting evidence presented by the parties' expert witnesses. A common pleas court must defer to an administrative agency's resolution of conflicting evidence if the evidence relied upon by the agency is reliable, probative, and substantial. *Bob Daniels Buick, supra,* citing *Ohio Historical Soc. v. State Emp. Relations Bd. (1993), 66 Ohio St. 3d 466, 470-471, 613 N.E.2d 591.* In the present case, we find that the common pleas court did not abuse its discretion in deferring to the hearing officer's findings on the directly conflicting testimony, and the record contains reliable, probative, and substantial [*21] evidence regarding each of the factors in *R.C. 4517.51.*

With regard to *R.C. 4517.51(A)*, the common pleas court found there was reliable, probative, and substantial evidence that if Fairchild relocated, there would not be an "oversaturation" or "rampant competition" in the RMA. Granville Cole, the Cleveland zone manager for Chevrolet Motor Division, testified that two dealerships in the RMA were relocating outside the RMA. Anderson, GM's expert witness, testified that the proper number of Chevrolet dealers are located in the RMA but they are not properly located within the RMA because five of the seven dealers are located in the eastern half where there is declining population and opportunity. In the western half, where the proposed Fairchild dealership would be located, there is increasing population, registrations, and households. Krumholz, Halleen's expert, agreed there has been a shift in population, investments, employment, and higher-income individuals away from Lakewood and toward Westlake.

The common pleas court also cited Anderson's testimony that the RMA is certainly capable of supporting the Fairchild dealership based [*22] upon market opportunity because the RMA is one of the largest markets in the state in terms of opportunity but one of the worst in terms of performance for Chevrolet. Anderson also testified that the proposed Fairchild dealership would be located about four and one-half miles from the Halleen dealership, which is typical of the distance the other Chevrolet dealers currently are to the nearest competition in this marketplace. Mark Halleen, the general manager of Halleen Chevrolet, testified that if Fairchild relocates, Halleen will continue to compete and sell cars. The testimony of Victor Nelawake, a CPA, indicated that Halleen is not suffering from rampant competition or oversaturation, finding that Halleen's balance sheet demonstrates it is profitable, very financially viable, well-capitalized, has sufficient cash to maintain its operations, and maintains adequate amounts of inventory.

Halleen cites Dr. Matthews', Mark Halleen's, and Carl Halleen's (Charles Halleen's nephew, Mark Halleen's father, and fifty-percent owner of Halleen Chevrolet) testimony that Halleen will lose sales and profits if Fairchild relocates. However, the common pleas court relied upon Anderson's contrary [*23] opinion that one competitor can stimulate competition among all same line-make competitors and that there is a "tremendous" opportunity for Halleen to benefit from a new dealership nearby. Anderson supported his opinion with empirical studies from four different United States cities demonstrating that after a dealer relocated, the surrounding Chevrolet dealers' sales increased. Further, as the hearing examiner pointed out, Matthews' projections are based upon an unrealistic "static" market, wherein he assumes that if a new dealer relocates, the Chevrolet dealers in the RMA will each lose a portion of their sales every year because aggregate sales numbers will remain unchanged. As the hearing examiner pointed out, Matthews' analysis does not take into account the growth of the market or increased competitive efforts among dealers.

With regard to *R.C. 4517.51(B)*, the common pleas court found there was reliable, probative, and substantial evidence that if Fairchild relocated, it would be beneficial to the public interest. Although Krumholz opined that the proposed relocation would not increase public benefit, there was substantial testimony from Anderson and [*24] Robert Fairchild that there has been tremendous retail, population, manufacturing, and lodging growth in the area of the proposed dealership in Westlake and a decline in such areas in Lakewood, and that relocation would benefit the growing population in that area. Fairchild also testified that relocating would increase customer satisfaction and convenience due to ample customer parking, openness, and a state-of-the-art facility. Fairchild further stated that the land on the proposed site is now largely vacant, and the new construction would increase employment and economic activity. The common pleas court also cited the testimony of Carl Halleen that increased employment, tax revenue, economic activity, and increased competition all benefit the public interest.

With regard to *R.C. 4517.51(C)(1)*, the common pleas court found that there was reliable, probative, and substantial evidence cited by the hearing examiner that the proposed Fairchild dealership would increase competition and customer convenience. The common pleas court cited Fairchild's testimony that the proposed location would be a tremendous convenience for customers because of the easy access off [*25] the highway and its location near other retail outlets and shopping centers. Cole also testified that the Fairchild dealership would improve customer convenience, access in the market, and competition. Fairchild further stated that the traffic count for the new location would be ten times greater than the old location. Anderson agreed with this testimony, citing to a study showing that the proposed site is the single best site for maximizing customer convenience for the entire RMA and for minimizing the average distance to a Chevrolet dealership for everyone who lives in the RMA.

With regard to *R.C. 4517.51(C)(2)*, the common pleas court found there was reliable, probative, and substantial evidence cited by the hearing examiner that the existing franchisees are not providing adequate market penetration and representation. The hearing examiner relied upon Anderson's testimony that Chevrolet's market share performance and market penetration in the entire RMA was less than the expected

penetration standard adjusted by product segments. He also stated that Chevrolet's penetration performance in the RMA was "very poor" as compared with Chevrolet's performance throughout [*26] the state (1994 - 78.6% of state average; 1995 - 77.8% of state average; 1996 - 72.7% of state average; first nine months of 1997 - 74.8% of state average). Anderson further testified that representation in the RMA as a whole is inadequate, has been over an extended period, and is trending downward. There was also a downward trend in market share performance for the RMA verses the national standard adjusted for local preferences. Anderson further concluded that there was inadequate competition among the Chevrolet dealers in the RMA based upon lost opportunities. Dr. Matthews also testified that the actual Chevrolet registrations for the RMA fell below expected penetration levels although he cautioned he could not state such with statistical certainty.

With regard to *R.C. 4517.51(D)*, Halleen argues that GM has not complied with the provisions of R.C. Chapter 4517 because its proposed financial assistance and special allocation plans relating to Fairchild's new dealership violate *R.C. 4517.59(M)*, which prohibits any predatory practice or discrimination against any new motor vehicle dealer. GM has agreed to provide Fairchild with [*27] $ 350,000 and to consider a special allocation of vehicles if Fairchild relocates. Halleen argues that these arrangements are unfair because it will not receive money from GM and already experiences product shortages. However, the hearing examiner cited testimony demonstrating that these arrangements were not predatory or discriminatory. David Fowler, an area manager for GM's dealer network development, testified that the $ 350,000 was for "site control," which assures GM that a piece of real estate is used exclusively for GM operations. He specifically stated that the $ 350,000 payment made to Fairchild is comparable to the amount of consideration that would be given to other GM dealers in these types of situations where GM is obtaining control of the real estate for twenty-five years. Fairchild was not required to accept the payment for site control, and other dealers have previously refused to relinquish site control to GM and thus, received no payment. As to the special allocation of vehicles, the hearing examiner cited Cole's testimony that when any dealer builds a new facility, GM always considers a request for allocation of vehicles, although it may not allocate any. He stated [*28] that the policy was expressed to dealers in 1995, and allows a special allocation request to any dealer that builds a new facility, relocates, renovates, or experiences a loss of inventory due to natural catastrophes. Cole further testified that the policy is used for grand openings at new locations. Therefore, there was reliable, probative, and substantial evidence that these policies are uniform and standard for GM based upon legitimate business purposes.

As the common pleas court noted, the hearing examiner also cited evidence supporting several non-statutory, business-related factors in favor of relocation. Fairchild's net profit deteriorated in recent years, and GM's Project 2000 study found that Fairchild's long-term viability was in jeopardy at its current location. Although Halleen suggests Fairchild's profitability problems are tied to its used car operations, Nelawake testified that the gross profits for both used and new units had been declining in recent years. Halleen also argues that Fairchild's working capital demonstrates it is in no financial distress. However, as Nelawake explained, because Fairchild's working capital is above standard, its poor performance can be [*29] ascribed to the location of the dealership in a deteriorating market. As previously noted, there was also substantial testimony regarding the population and retail shift away from Lakewood and toward the proposed new location.

Further, Fairchild testified that his current location in Lakewood has poor access and half the acreage of the Westlake site. The Lakewood site also lacks convenient parking and an adequate customer waiting area. Halleen counters that Fairchild's problems may be attributed to its lack of investment in its facilities. Halleen argues that its fixed assets at cost between 1993 and 1997, increased by approximately $ 390,000, while Fairchild's total investment at cost in fixed assets for the same period was only $ 22,000. However, Fairchild testified that he bought and razed a nearby building to construct a new display area, purchased a double residence and razed it to allow access to another street and more display space, built a seven thousand square-foot service facility on their back lot, and bought a closed gas station to make a truck facility; but the Lakewood facility is now "landlocked" and cannot be expanded. He testified the three acres in Lakewood are [*30] convoluted and split-up. Also, he testified that he considered tearing down the Lakewood facilities and rebuilding, but he does not see that as a good investment given the declining market.

Given the proceeding evidence, the record demonstrates that the common pleas court properly exercised its discretion and deferred to the hearing examiner's resolution of the evidentiary conflicts. The Ohio Supreme Court stated:

An agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable. *Ohio Historical Soc. v.*

*State Emp. Relations Bd. (1993), 66 Ohio St. 3d 466, 471, 613 N.E.2d 591.*

In the present case, the hearing examiner's findings were not internally inconsistent, did not rest upon improper inferences, and were not otherwise unsupportable. Because the common pleas court properly exercised its discretion in determining that the decision of the MVDB was supported by reliable, probative, and substantial evidence, Halleen's sixth [*31] assignment of error is overruled.

Halleen argues in its fourth assignment of error that the MVDB's decision is contrary to public policy. Halleen's argument is, generally, that one of the specific purposes of *R.C. 4517.51* is to prevent the oversaturation of a franchisee's market area. Because we have found the trial court did not abuse its discretion in finding there was reliable, probative, and substantial evidence demonstrating good cause for the relocation of the Fairchild dealership, we find Halleen's argument that the relocation is against public policy to be unfounded. We already found under our discussion of *R.C. 4517.51* that the proposed relocation would be beneficial to the public interest and that inadequate competition existed in the RMA. Therefore, Halleen's fourth assignment of error is overruled.

Accordingly, Halleen's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LAZARUS and TYACK, JJ., concur.