# EXHIBIT B

LEXSEE 1995 U.S. DIST. LEXIS 22173

BSW DEVELOPMENT CORP., et al., Plaintiffs, vs. CITY OF DAYTON, et al., Defendants.

Case No. C-3-93-438

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

1995 U.S. Dist. LEXIS 22173

March 23, 1995, Filed

**DISPOSITION:** [*1] PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. # 11) SUSTAINED IN PART AND OVERRULED IN PART; PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DOC. # 12) OVERRULED; DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 25) SUSTAINED IN PART AND OVERRULED IN PART.

**COUNSEL:** For BSW DEVELOPMENT GROUP, WILLIAM I SCHOENFELD, plaintiffs: Dwight Dean Brannon, Dwight D Brannon & Associates, Dayton, OH.

For DAYTON CITY OF, BOARD OF ZOINING APPEALS, LANDMARK COMMISSION, TERESA PROSSER, defendants: Neil Frank Freund, Shawn Michael Blatt, Freund Freeze & Arnold, Jane Michele Lynch, Green & Green, Dayton, OH.

**JUDGES:** WALTER HERBERT RICE, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** WALTER HERBERT RICE

**OPINION:**

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. # 11); DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DOC. # 12); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 25)

In 1984, Plaintiff BSW Development Group ("BSW") purchased a parcel of real estate located on South Patterson Boulevard, within the City of Dayton, Ohio ("Dayton"). n1 After BSW had developed [*2] a three story office building on a portion of that real estate, it sought a permit from Dayton's Division of Inspectional Services to demolish a building ("Wilcon Building") which was located on the other portion of that property. Under Dayton's ordinances, a permit to demolish a building which is listed on or eligible to be listed on the National Register of Historic Places ("National Register") can not be issued unless the applicant obtains a Certificate of Appropriateness from the Landmark Commission ("LC"). Dayton Revised Code of General Ordinances ("RCGO") §§ 150.45 and 150.246. Since the Department of Inspectional Services determined that the Wilcon Building was eligible to be listed on the National Register, it refused to issue a permit and referred BSW to the LC. Under RCGO § 150.246(A)(4), the LC cannot issue a Certificate of Appropriateness unless the applicant for the demolition permit has provided clear evidence that "the square foot cost of meeting the minimum building code would exceed the square foot market value of similarly used and improved structures in the planning district." n2 In other words, the applicant must clearly show that the cost of renovating the structure [*3] in question, by bringing it up to code, would exceed its market value. On July 29, 1989, the LC met and concluded that BSW had not met its burden under § 150.246(A)(4). Therefore, the LC refused to issue a Certificate of Appropriateness to BSW, thus, in effect, denying permission to demolish the Wilcon Building.

n1 The other named Plaintiff, in addition to BSW, is William Schoenfeld ("Schoenfeld"), one of BSW's partners. BSW's other partners are Dwight Brannon, who is also Plaintiffs' counsel, and Dennis Williams.n2 Section 150.246(A) contains three other conditions which, if met, allow the owner of a building to obtain a demolition permit. None of these other conditions is pertinent in the present case.

BSW then appealed the LC's decision to Dayton's Board of Zoning Appeals ("BZA"). When the BZA affirmed the LC's decision, BSW initiated this litigation, by filing an appeal in the Court of Common Pleas for Montgomery County, Ohio ("Common Pleas Court"), from the BZA's decision to deny it a demolition [*4] permit. n3 BSW alleged that the relevant Dayton ordinances, § § 150.45 and 150.246(A), were unconstitutional and, in addition, that the BZA's decision was not supported by the preponderance of substantial, reliable and probative evidence. On December 4, 1991, the Common Pleas Court issued its opinion, n4 in which it reversed the BZA's decision to deny a demolition permit. The Common Pleas Court determined that the manner in which § § 150.45 and 150.246(A) had been applied denied BSW property without due process of law and constituted a taking of property without just compensation. n5 In addition, the Common Pleas Court concluded that the BZA's decision was not supported by the preponderance of substantial, reliable and probative evidence.

n3 Whether the Plaintiffs named other Defendants/Appellees, in addition to the BZA, is not clear. No party has favored the Court with a copy of the initial complaint in this litigation. As is explained below, this litigation was not removed to this Court, until the Plaintiffs filed a verified, supplemental complaint. Plaintiffs filed that pleading after the Common Pleas Court entered judgment in their favor and the Montgomery County Court of Appeals affirmed that judgment (albeit on different grounds). [*5]

n4 A copy of the Common Pleas Court's decision is attached to Defendants' notice of removal (Doc. # 1).n5 In its Decision, the Common Pleas Court did not specify whether the denial of the Certificate of Appropriateness violated the United States Constitution or the Ohio Constitution. However, that Court relied upon cases decided by the United States Supreme Court interpreting the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment; therefore, this Court assumes that the Common Pleas Court concluded that the manner in which § § 150.45 and 150.246(A) had been applied violated the United States Constitution.

The BZA appealed the decision of the Common Pleas Court to the Court of Appeals for Montgomery County ("Court of Appeals"). On May 7, 1993, the Court of Appeals issued its decision, n6 affirming the Common Pleas Court. However, the Court of Appeals' decision was somewhat narrower than that of the Common Pleas Court. Judge Brogan, writing for the court, noted that it was inappropriate for a court to pass on the constitutionality of an ordinance [*6] if such a decision were not necessary. Based upon the record before it, the Court of Appeals concluded that BSW had met its burden of demonstrating that it was entitled to a Certificate of Appropriateness under § 150.246(A)(4), i.e., by clearly showing that the cost of renovating the Wilcon Building, by bringing it up to code, would exceed its market value. Accordingly, the Court of Appeals affirmed the Court of Common Pleas, without deciding whether the manner in which § § 150.45 and 150.246(A) were applied violated the constitution. The BZA did not seek review of the Court of Appeals' decision by the Ohio Supreme Court.

n6 A copy of the Court of Appeals' decision is attached to Defendants' notice of removal (Doc. # 1).

On May 18, 1993, Jeffrey Tyler, a Historic Preservation Officer for Dayton, wrote to BSW's counsel, informing him that BSW would receive a Certificate of Appropriateness and, thus, a demolition permit, when it complied with § 150.246(B) and (C). Subsection 150.246(B) provides that, in order [*7] to obtain a Certificate of Appropriateness, an applicant must submit a reuse plan which mitigates any adverse effects of the removal of the structure. Under subsection 150.246(C), in order to obtain such a certificate, an applicant must post a performance bond and pay a mitigation fee equal to the greater of $ 50.00 or 10% of the estimated cost of demolition, unless it has requested and obtained a waiver of those requirements from the LC. BSW did not pursue that avenue; rather, on October 18, 1993, Plaintiffs filed, in the Common Pleas Court, a supplemental, verified complaint in the same case as their administrative appeal. n7 In that pleading, the Plaintiffs named Dayton, the BZA, the LC and Tressa Prosser ("Prosser"), an employee of Dayton who serves as the Secretary of the LC, as Defendants. On November

16, 1993, Defendants removed Plaintiffs' supplemental, verified complaint to this Court. See Doc. # 1.

> n7 A copy of Plaintiffs' supplemental, verified complaint is attached to Defendants' notice of removal (Doc. # 1).

[*8]

In that pleading, Plaintiffs request declaratory relief, injunctive relief, appropriation/condemnation and damages. The Plaintiffs set forth the following 12 claims for relief, under both federal and state law, to wit:

1. In their first claim for relief, Plaintiffs set forth a claim under *42 U.S.C. § 1983*, and allege that the denial of the Certificate of Appropriateness and the determination that the Wilcon Building was eligible to be listed on the National Register have denied them property without due process of law and equal protection of the laws, as well as constituting a taking without just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution. n8

> n8 Plaintiffs base their allegations regarding the determination that the Wilcon Building was eligible to be listed on the National Register upon the decision of the City to seek such a listing without their consent.

2. In their second claim for relief, Plaintiffs allege that the [*9] Defendants, by taking BSW's property without paying them just compensation, have violated the Due Process Clause of the Fifth and Fourteenth Amendments.

3. In their third claim for relief, Plaintiffs allege that the Defendants have knowingly, willfully and maliciously denied BSW's right to equal protection of the laws, in violation of the Fifth and Fourteenth Amendments, thus entitling them to an award of punitive damages.

4. In their fourth claim for relief, Plaintiffs allege that the denial of the demolition permit and the Certificate of Appropriateness and the determination that the Wilcon Building was eligible to be listed on the National Register constituted a conspiracy by the Defendants to deny them property without due process, to deprive them of equal protection of the laws and to take BSW's property without just compensation, all in violation of *42 U.S.C. § 1985*.

5. In their fifth claim for relief, Plaintiffs allege that Prosser knowingly and maliciously made false statements to both the LC and the BZA, which constituted malicious interference with BSW's right to petition the government for redress of grievances.

6. In their sixth [*10] claim for relief, Plaintiffs allege that BSW relied to its detriment on the false statements made by Prosser and other employees of Dayton.

7. In their seventh claim for relief, Plaintiffs allege that Prosser and the other Dayton employees were under a duty to provide accurate information to BSW, that they failed to exercise reasonable care in executing that duty, thus providing false information, and that BSW relied upon the false information provided to it to its detriment.

8. In their eighth claim for relief, Plaintiffs allege and seek a declaratory judgment to the effect that Dayton's Revised Historic District Ordinance ("Historic District Ordinance"), RCGO § § 44.50-67, 150.45 and 150.230-259, violate the constitutions of the United States and Ohio.

9. In their ninth claim for relief, Schoenfeld sets forth a claim on behalf of all taxpayers, alleging that the Historic District Ordinance is unconstitutional and seeking injunctive relief preventing Dayton from enforcing it.

10. In their tenth claim for relief, Plaintiffs seek injunctive relief during the pendency of this litigation, preventing the Defendants from illegally and unconstitutionally interfering with [*11] and taking their property and from violating their constitutional rights.

11. In their eleventh claim for relief, Plaintiffs allege that the Defendants have violated their rights to substantive and procedural due process.

12. In their twelfth claim for relief, Plaintiffs seek an award of attorney's fees, pursuant to *42 U.S.C. § 1988*.

This case is now before the Court on the following motions, to wit: Plaintiffs' motion for partial summary judgment (Doc. # 11), Plaintiffs' motion for a preliminary injunction (Doc. # 12) and Defendants' motion for summary judgment (Doc. # 25). n9 As a means of analysis, the Court will initially set forth the standards which govern all motions for summary judgment. Then, the Court will turn to the three motions, discussing the two summary judgment motions together because they raise issues in common. n10

n9 Defendants' motion to disqualify Plaintiffs' counsel (Doc. # 42) is also pending. The Court will rule on that motion by separate entry.n10 Indeed, Defendants' motion for summary judgment (Doc. # 25) also serves as their memorandum in opposition to Plaintiffs' motion for partial summary judgment (Doc. # 11).

[*12]

I. Standards governing motions for summary judgment

A motion for summary judgment "should be granted where the evidence is such that it 'would require a directed verdict [now a judgment as a matter of law] for the moving party.'" *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986),* quoting *Sartor v. Arkansas Gas Corp., 321 U.S. 620, 624, 88 L. Ed. 967, 64 S. Ct. 724 (1944).* Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*477 U.S. at 323.* [*13] See also *Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991)* (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial." quoting *Gutierrez v. Lynch, 826 F.2d 1534, 1536 [6th Cir. 1987]).* The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson, 477 U.S. at 250* (quoting *Fed. R. Civ. P. 56(e)).*

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).* See also, *Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994)* ("The plaintiff must present more than a scintilla of evidence in support [*14] of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp., 477 U.S. at 324.* Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c).* Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson, 477 U.S. at 255* (emphasis added). Of course, if the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. [*15] In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989),* cert. denied, *494 U.S. 1091 (1990).* See also, *L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.),* cert. denied, *506 U.S. 832, 113 S. Ct. 98, 121 L. Ed. 2d 59 (1992)* ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties. [*16]

II. Plaintiffs' motion for partial summary judgment (Doc. # 11) and Defendants' motion for summary judgment (Doc. # 25)

With these two motions, the parties focus primarily on the Plaintiffs' claims that the Defendants' actions have constituted a taking without just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution. n11

n11 The Takings Clause of the Fifth Amendment provides, "nor shall private property be taken for public use, without just compensation." The Takings Clause of the Fifth Amendment is made applicable to the states (and their political subdivisions) by the Due Process Clause of the Fourteenth Amendment. *Dolan v. City of Tigard, 512 U.S. 374, 114 S. Ct. 2309, 2316, 129 L. Ed. 2d 304 (1994)* (citing *Chicago, B. & Q. R. Co. v. Chicago, 166 U.S. 226, 41 L. Ed. 979, 17 S. Ct. 581 (1897)*).

Initially, Plaintiffs argue that the fact that an unconstitutional taking has occurred is established, as a matter of law, [*17] by the doctrine of res judicata and, thus, entitles them to summary judgment, as to liability, on their claims under the Takings Clause of the Fifth Amendment, as made applicable to the states and their political subdivisions by the Fourteenth Amendment. In particular, the Plaintiffs rely on the Common Pleas Court's decision. That court did decide that the decisions of the LC and the BZA to deny a Certificate of Appropriateness to BSW constituted a taking without just compensation. However, although the question of a taking without just compensation was presented to it by the parties, the Court of Appeals expressly declined to address that constitutional issue, noting that courts must avoid ruling on constitutional issues, unless such a ruling is absolutely necessary. *BSW Development Group v. Dayton Board of Zoning Appeals, 1993 Ohio App. LEXIS 2544 (May 7, 1993) at 4-5*. Accordingly, the Court of Appeals, while affirming the trial court, decided only that the decisions of the LC and the BZA that BSW had not met the criteria for a Certificate of Appropriateness, contained in § 150.246(A)(4), were not supported by the preponderance of substantial, reliable and probative [*18] evidence.

The doctrine of res judicata is divided into two distinct components, to wit: claim preclusion and issue preclusion (also known as collateral estoppel). See e.g., *Montana v. United States, 440 U.S. 147, 59 L. Ed. 2d 210, 99 S. Ct. 970 (1979)*. Herein, Plaintiffs rely on issue preclusion, arguing that the Defendants are prevented from relitigating the question of whether there was a taking without just compensation. Under Ohio law, n12 issue preclusion prevents the relitigation of an issue that was actually and necessarily decided in a prior action. *National Distillers & Chemical Corp. v. Limbach, 71 Ohio St. 3d 214, 216, 643 N.E.2d 101, 103 (1994)*. The fatal flaw in Plaintiffs' argument regarding issue preclusion is that the Court of Appeals expressly concluded that it was not necessary to decide whether a taking without just compensation had occurred. n13 Moreover, under the doctrine of law of the case, the decision of the Court of Appeals must be followed. Under Ohio law, the doctrine of law of the case provides that a decision in a case by an appellate court must be followed subsequently by the trial court in that case. *Nolan v. Nolan, 11 Ohio St. 3d 1, 462 N.E.2d 410 (1984)*; [*19] *Weir v. Kebe, 29 Ohio App. 3d 53, 503 N.E.2d 177 (Cuyahoga County 1985)*. Indeed, the doctrine of law of the case requires a trial court to follow the "plain import" of the appellate court's decision. *Local 4501 v. Ohio State University, 24 Ohio St. 3d 191, 193-94, 494 N.E.2d 1082, 1085 (1986)*. This Court must give the same preclusive effect to the Court of Appeals' decision as would a state court. *Allen v. McCurry, 449 U.S. 90, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980)*. Therefore, if the Court of Appeals' decision established the law of the case for the Common Pleas Court, that decision similarly established it for this Court. Herein, not only the plain import of the Court of Appeals' decision but also its express language was that it was not necessary for it or for the Common Pleas Court to decide the constitutional issues upon which the Court of Common Pleas had ruled. Once again, the issue preclusion component of res judicata prevents the relitigation of an issue only when that issue was actually and necessarily decided in the prior action. n14 *National Distillers, supra*.

n12 This Court must apply principles of Ohio law, because federal courts are bound by *28 U.S.C. § 1738* to give the same preclusive effect to state court judgments as would be given by state courts. *Allen v. McCurry, 449 U.S. 90, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980); Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, 918 F.2d 658, 662 (6th Cir. 1990)*. [*20]

n13 In support of their argument that principles of res judicata prevent the Defendants from relitigating the question of whether a taking without just compensation has occurred, the Plaintiffs place primary reliance on the decision of Judge Thomas Lambros in *Negin v. City of Mentor, 601 F. Supp. 1502 (N.D.Ohio 1985)*. In *Negin*, Judge Lambros concluded that a decision by the Ohio Supreme Court that the defendant's denial of a building permit violated due process prevented the defendant from relitigating that issue in a subsequent § 1983 action. However, in the present case, unlike *Negin*, the final state court to address the constitutional issues has concluded that resolution of those constitutional issues was not necessary to the court's decision. Therefore, *Negin* is distinguishable, since the constitutional issues were not actually decided by the state appellate court. n14 Although the Court of Appeals expressly held that resolution of constitutional issues was not necessary, the

Court of Appeals did not vacate that portion of the Common Pleas Court's decision in which it had concluded that there had been a taking without just compensation and a denial of property without due process. Technically, the Court of Appeals' failure to vacate the decision of the Common Pleas Court on the constitutional issues may mean that said decision remains "on the books." However, that fact is of no import, because the appellate court expressly concluded that it was not necessary for the Common Pleas Court to have reached those constitutional issues; therefore, issue preclusion does not prevent the relitigation of those issues.

[*21]

Since the Court of Appeals concluded that resolution of the constitutional issues was not necessary and since that court's decision must be followed, n15 this Court rejects the Plaintiffs' argument that res judicata entitles them to summary judgment on their claims under the Takings Clause of the Fifth Amendment, as made applicable to the states and their political subdivisions by the Fourteenth Amendment. n16

n15 Since this Court has concluded that issue preclusion does not prevent the Defendants from relitigating the question of whether there was a taking without just compensation, it is not necessary to address another intriguing issue, which the parties have not raised. Issue preclusion prevents the relitigation of an issue decided in a prior action. *National Distillers, supra.* Herein, there is no prior action in which an issue was actually and necessarily decided; rather, Plaintiffs have filed a supplemental, verified complaint in the same action in which the trial court decided that BSW's property had been taken without just compensation. In other words, this Court need not decide whether the absence of a prior case prevents the Court from applying issue preclusion to prevent the Defendants from relitigating the constitutional issues. [*22]

n16 Plaintiffs also argue that principles of res judicata entitle them to summary judgment, as to liability, on their due process claims. For the reasons set forth above in its discussion of Plaintiffs' claims for damages under the Takings Clause of the Fifth Amendment, the Court rejects that argument.

Defendants argue that they are entitled to summary judgment on Plaintiffs' claims under the Takings Clause of the Fifth Amendment, as made applicable to the states and their political subdivisions by the Fourteenth Amendment, because those claims are not ripe for adjudication. In *Williamson County Regional Planning Comm. v. Hamilton Bank,* 473 U.S. 172, 87 L. Ed. 2d 126, 105 S. Ct. 3108 (1985), the Supreme Court held that a claim under the Takings Clause of the Fifth Amendment is premature when the person seeking compensation has not taken advantage of procedures supplied by state law for obtaining compensation. The Williamson County Court wrote:

> A second reason the taking claim is not yet ripe is that respondent did not seek compensation through the procedures [*23] the State has provided for doing so. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Hodel v. Virginia Surface Mining & Reclamation Assn., Inc., 452 U.S. [264, 297, n. 40 (1981)]. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "'reasonable, certain and adequate provision for obtaining compensation'" exist at the time of the taking. *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 124-125, 42 L. Ed. 2d 320, 95 S. Ct. 335 (1974) (quoting *Cherokee Nation v. Southern Kansas R. Co.,* 135 U.S. 641, 659, 34 L. Ed. 295, 10 S. Ct. 965 (1890)). See also Ruckelshaus v. Monsanto Co., 467 U.S. [986, 1016 (1984)]; *Yearsley v. W. A. Ross Construction Co.,* 309 U.S. 18, 21, 84 L. Ed. 554, 60 S. Ct. 413 (1940); *Hurley v. Kincaid,* 285 U.S. 95, 104, 76 L. Ed. 637, 52 S. Ct. 267 (1932). If the government has provided an adequate process for obtaining compensation, and if resort to that process "[yields] just compensation," then the property owner "has [*24] no claim against the Government" for a taking. *Monsanto,* 467 U.S. at 1013, 1018, n. 21. Thus, we have held that taking claims against the Federal Government are premature until the property owner has availed itself of the process provided by the Tucker Act, 28 U.S.C. § 1491. *Monsanto,* 467 U.S. at 1016-1020. Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the

procedure and been denied just compensation.

*473 U.S. at 194-95* (footnote omitted). On a number of occasions, the Sixth Circuit has applied Williamson County in cases in which Ohio landowners have sought damages, alleging that governmental officials had taken their property without just compensation. See e.g., *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994); *Silver v. Franklin Tp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1035 (6th Cir. 1992); *Four Seasons Apartment v. Mayfield Heights*, 775 F.2d 150 (6th Cir. 1985). n17 In those cases, the Sixth Circuit has consistently [*25] recognized that Ohio law provides a procedure, a Writ of Mandamus directing governmental officials to institute an eminent domain proceeding to determine just compensation, which a person must exercise before filing a claim under the Takings Clause of the Fifth Amendment, as made applicable to the states and their political subdivisions by the Fourteenth Amendment. n18 Herein, the Plaintiffs have not taken advantage of that procedure. Therefore, the Defendants are entitled to summary judgment, on the Plaintiffs' claims under the Takings Clause of the Fifth Amendment, as made applicable to the states and their political subdivisions by the Fourteenth Amendment, because those claims are not ripe. n19 Therefore, those claims must be dismissed, without prejudice.

> n17 Indeed the claims in Silver and Four Seasons arose under very analogous situations, wherein plaintiffs also claimed an inverse condemnation. For instance, in Silver, a developer alleged that his property had been taken without just compensation because governmental officials had refused to grant him a conditional zoning permit, which would have permitted him to construct a subdivision. In Four Seasons, a developer alleged that the recission of a building permit constituted a taking without just compensation. Williamson County, itself, arose out a claim by a developer who was denied a zoning permit; however, in that case, the Supreme Court examined the availability of remedies under Tennessee law, rather than the Ohio law, which is at issue herein and was at issue in Silver and Four Seasons. [*26]
>
> n18 Plaintiffs argue that the recent decision by the Ohio Supreme Court in *State ex rel. Levin v. Sheffield Lake*, 70 Ohio St. 3d 104, 637 N.E.2d 319 (1994), casts doubt on the availability of the remedy of mandamus. This Court does not agree. In Levin, the Ohio Supreme Court merely held that a person was not entitled to a Writ of Mandamus in that action, because he had an existing, adequate remedy, to wit: another pending action in which he also sought a Writ of Mandamus, directing the governmental entity to commence eminent domain proceedings to determine just compensation. In the course of its decision, the Levin court reaffirmed the principle that a landowner may seek a writ compelling governmental officials to commence eminent domain proceedings to determine just compensation. *Id. at 108-09, 637 N.E.2d at 323.*
>
> n19 Since the Court has concluded that the Plaintiffs' claims for damages under the Takings Clause are not ripe, it would be premature and, thus, inappropriate for the Court to address the parties' arguments regarding the merits of that claim. Therefore, the Plaintiffs' reliance on the Supreme Court's recent decision in *Dolan City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994) is misplaced, because, therein, the Supreme Court did not address the question of when a claim under the Takings Clause is ripe. It would be similarly inappropriate to address Defendants' argument that Prosser is entitled to qualified immunity on Plaintiff's taking claim, other than to note that Defendants did not argue that Prosser is qualifiedly immune and, thus, entitled to summary judgment on any other of Plaintiffs' federal claims. Similarly, the Court finds it unnecessary to address Defendants' arguments, contained in their reply memorandum (Doc. # 32), that Plaintiffs' claims under the Takings Clause are barred by the statute of limitations and/or res judicata. However, the Court does note that it has some difficulty understanding how a claim which, as Defendants have persuasively argued, is not ripe (therefore, in effect, does not now exist) could be barred either by the statute of limitations or res judicata.

[*27]

Defendants also seek summary judgment on Plaintiffs' fourth claim for relief, in which Plaintiffs allege that the denial of the demolition permit and the Certificate of Appropriateness, as well as the determination that the Wilcon Building was eligible to be listed on the National Register, constituted a conspiracy by the Defendants to deny them property without due process and equal protection of the laws and a taking of BSW's property without just compensation, all in violation of *42 U.S.C. § 1985*. Defendants point to the fact that the alleged conspiracy, which Plaintiffs set forth in their complaint, consisted solely of the Defendants, to wit: Dayton, the BZA, the LC and Prosser. Defendants argue that, under the intracorporate conspiracy doctrine, they are incapable of conspiring with each other. Plaintiffs, on the other hand, argue that summary judgment is premature, because Prosser may have been acting for personal reasons. n20

n20 Plaintiffs also argue that summary judgment is premature, because the conspiracy may have included some persons who were not employees of Dayton. That argument is without merit. Quite simply, the Plaintiffs have alleged that a conspiracy existed only among the Defendants.

[*28]

It is axiomatic that to impose liability under § 1985(3), the plaintiff must prove the existence of a conspiracy among two or more persons. *Griffin v. Breckenridge*, 403 U.S. 88, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971). The parties agree that a municipal corporation, such as Dayton, is not capable of conspiring with its employees, who are acting within the scope of their employment. *Johnson v. Hills & Dales General Hospital*, 40 F.3d 837 (6th Cir. 1994); *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Ed.*, 926 F.2d 505 (6th Cir. 1991); *Doherty v. American Motors Corp.*, 728 F.2d 334, 339-40 (6th Cir. 1984); *Rennick v. Champion Intern. Corp.*, 690 F. Supp. 603, 604 (S.D.Ohio 1987). However, as the Plaintiffs argue, the Sixth Circuit has recognized that a corporation can conspire with its employees, when those employees act outside the scope of their employment. *Johnson*, 40 F.3d at 840-41. n21 Herein, all the acts Plaintiffs allege Prosser to have done relate to her duties as an employee of Dayton and as the secretary of the LC. The Plaintiffs have not alleged that any act [*29] of Prosser's was taken outside the scope of her employment with Dayton, nor have they presented evidence of that fact. Indeed, as is discussed below, the Plaintiffs, contending that there is no genuine issue of material fact, seek summary judgment in their favor on the issue of whether Prosser was acting under color of state law while performing the actions set forth in their complaint.

n21 To the extent that the Plaintiffs are arguing that this exception to the intracorporate conspiracy doctrine is broader, in other words, that it would include conspiracies between a corporation and its employees who are acting within the scope of their employment but who are motivated by personal reasons, the Court rejects such an argument. In Johnson, the Sixth Circuit concluded that the intracorporate conspiracy doctrine provided a shield to liability under § 1985(3), as long as the employees were acting within the scope of their employment. Of course, when an employee is not acting within the scope of his or her employment, that employee can conspire with his or her employer, and the intracorporate conspiracy doctrine does not provide a shield to liability for a claim under § 1985(3).

[*30]

Consequently, this Court concludes that all of the acts, which Plaintiffs attempt to impose upon Prosser, were undertaken within the scope of her employment. Therefore, the Court agrees with Dayton that the intracorporate conspiracy doctrine prevents the imposition of liability upon the Defendants under § 1985(3). n22 Accordingly, the Court sustains the Defendants' motion for summary judgment (Doc. # 25), to the extent that Defendants seek summary judgment on Plaintiff's claim under § 1985(3), their fourth claim for relief.

n22 Even if the Court agreed with the Plaintiffs that genuine issues of material fact prevent the Court from concluding that the intracorporate conspiracy precludes the imposition of liability upon the Defendants under § 1985(3), the Plaintiffs' fourth claim would nonetheless be fatally flawed. To prevail on a claim under § 1985(3), the plaintiff must prove that a racial or otherwise class-based animus was behind the conspirators' action. *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 77 L. Ed. 2d 1049, 103 S. Ct. 3352 (1983). Although Scott involved a private conspiracy, courts have concluded that the requirement that there be a racial or other class-based animus behind the conspirators' actions applies equally to conspiracies under color of state law, such as the conspiracy Plaintiffs allege herein. *Gagliardi v. Village of Paulding*, 18 F.3d 188, 194 (2d Cir. 1994) (and cases cited therein). The Plaintiffs have neither alleged nor presented evidence that the Defendants were motivated by a racial or some other class-based animus. Indeed, in his affidavit, Dennis Williams, one of BSW's partners, states that the Defendants were motivated to satisfy the ego of historic preservationists. See Doc. # 11 at Ex. 61.

[*31]

Defendants also seek summary judgment on Plaintiffs' request for an award of punitive damages. The Court agrees that Dayton, the BZA and the LC are entitled to summary judgment on the Plaintiffs' request for such an award. Under § 1983, punitive damages cannot be imposed upon governmental entities such as

Dayton, the BZA and the LC. *City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981)*. In addition, state law provides that, subject to certain exceptions which are not pertinent to the present case, governmental entities are not liable for the torts committed by their employees in connection with governmental functions. *Ohio Rev. Code § 2744.02(B)*. Herein, the Plaintiffs' allegations relate to the enforcement of land use and historic landmark regulations, which are clearly governmental functions. *Id.* at § 2744.01(C)(2)(p). Therefore, there is no basis in state law to impose punitive damages upon Dayton, the BZA or the LC. n23

n23 In opposing this branch of Defendants' motion for summary judgment, Plaintiffs rely on cases decided by Ohio courts which have addressed the question of when a corporation can be held liable for punitive damages for the tortious conduct of its employees. However, none of those cases are relevant to the Defendants' motion, because they do not discuss the liability of governmental entities under Ohio's Political Subdivision Tort Liability Law, Ohio Revised Code Chapter 2744, which was the basis of this branch of the Defendants' motion, as to Plaintiffs' state law claims, and of the Court's decision, thereon.

[*32]

The Defendants also seek summary judgment on Plaintiffs' request for an award of punitive damages against Prosser, arguing that the Plaintiffs have sued Prosser in her official capacity and that a suit against an employee of a governmental entity in her official capacity is a suit against the government itself. n24 The Court does agree with the Defendants that a suit against an employee of a governmental entity in her official capacity is a suit against the governmental entity. *Brandon v. Holt, 469 U.S. 464, 83 L. Ed. 2d 878, 105 S. Ct. 873 (1985)*. However, this Court cannot agree with the Defendants that the Plaintiffs have sued Prosser in her official capacity. Rather, the Plaintiffs seek to impose liability upon Prosser for the acts she personally undertook. Merely because an employee is acting within the scope of her employment does not mean she cannot be sued in her individual capacity. *Hafer v. Melo, 502 U.S. 21, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991)*. Therefore, Prosser is potentially liable for punitive damages.

n24 This argument is contained in Defendants' reply memorandum (Doc. # 32).

[*33]

Accordingly, the Court sustains the Defendants' motion for summary judgment (Doc. # 25) to the extent that they seek summary judgment on Plaintiffs' request for an award of punitive damages against Dayton, the BZA and the LC, and overrules that motion to the extent that Defendants seek summary judgment on Plaintiffs' request for an award of punitive damages against Prosser.

In their reply memorandum (Doc. # 32), Defendants argue that they are entitled to summary judgment on Plaintiffs' state law claims which are predicated upon fraud or false statements (the Plaintiffs' fifth, sixth and seventh claims for relief), because those claims are barred by the four-year statute of limitations, *Ohio Revised Code § 2305.09(D)*. n25 The Defendants also argue that the statute of limitations began to run when the alleged false statements were made, which occurred more than four years before October 18, 1993, when the Plaintiffs filed their verified, supplemental complaint, which was later removed to this Court. The Plaintiffs agree that § 2305.09(D) is the appropriate statute of limitations. See Doc. # 39 at 4. However, the Plaintiffs argue that their claims did not accrue until November 16, 1989, when [*34] the BZA released its decision affirming the LC. Under Ohio law, a cause of action for fraud does not accrue until the injured party discovers the fraud. *Shover v. Cordis Corp., 61 Ohio St. 3d 213, 217, 574 N.E.2d 457, 461 (1991)*. Herein, the Defendants have not supplied any evidence which would establish, as a matter of law, that the Plaintiffs discovered the alleged fraud before the BZA released its decision, on November 16, 1989, a date which was less than four years before the Plaintiffs filed their verified, supplemental complaint. Therefore, the Court concludes that the Defendants are not entitled to summary judgment on Plaintiffs' state law claims which are predicated upon fraud or false statements.

n25 This argument is not contained in the Defendants' motion for summary judgment (Doc. # 25).

Plaintiffs also seek summary judgment on two other issues, neither of which the Defendants have contested. First, the Plaintiffs argue that Dayton is a person under § 1983. This Court agrees. [*35] See *Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)*.

Second, Plaintiffs argue that the Defendants' actions were taken under color of state law. Once again, this Court agrees. A person acts under color of state law when that actor has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 85 L. Ed. 1368, 61 S. Ct. 1031 (1941)). All of the allegations in the Plaintiffs' complaint relate to BSW's attempts to secure permission from Dayton to demolish the Wilcon Building. Decisions relating to land use constitute the exercise of power possessed by virtue of state law. Indeed, Dayton argues that punitive damages cannot be imposed upon it because the allegations in Plaintiffs' complaint relate to the execution of governmental functions. Accordingly, the Court sustains the Plaintiffs' motion for partial summary judgment (Doc. # 11), to the extent that they seek [*36] summary judgment on the issue of Dayton's status as a person and the question of whether the actions alleged to have been taken were performed under color of state law.

Based upon all of the foregoing, the Court sustains in part and overrules in part the Plaintiffs' motion for partial summary judgment (Doc. # 11). The Court sustains that motion, to the extent that Plaintiffs seek summary judgment on the issue of Dayton's status as a person and the question of whether the actions alleged to have been taken were performed under color of state law. Otherwise, the Court overrules that motion. In addition, the Court has sustained in part and overruled in part the Defendants' motion for summary judgment (Doc. # 25). The Court has sustained that motion in the following regards, to wit: 1) on Plaintiffs' claims under the Takings Clause of the Fifth Amendment (parts of the Plaintiffs' first, second, eighth, ninth and tenth claims for relief), without prejudice; n26 2) on Plaintiffs' claim under § 1985(3) (their fourth claim for relief), with prejudice; and 3) on Plaintiffs' request for an award of punitive damages against Dayton, the BZA and the LC, with prejudice. Otherwise, the Court has [*37] overruled that motion.

---

n26 The Court has concluded that those claims are not ripe; therefore, Plaintiffs' claims under the Takings Clause must be dismissed, without prejudice. After the Plaintiffs have exercised the remedy provided by state law (i.e., a Writ of Mandamus compelling Dayton to commence eminent domain proceedings and to establish just compensation), they may file a new claim under Takings Clause, if the state action fails to provide a remedy. *Harris*, 20 F.3d at 1405.

---

III. Plaintiffs' Motion for Preliminary Injunction (Doc. # 12)

With their Motion for Preliminary Injunction (Doc. # 12), Plaintiffs seek to have the Court enjoin Dayton from enforcing a Notice of Violation and Orders of Compliance issued for the Wilcon Building and from directing the Plaintiffs to maintain the Wilcon Building, to correct hazardous conditions at that property and to remove an underground storage tank. The parties agreed that an evidentiary hearing was not necessary on Plaintiffs' Motion for [*38] a Preliminary Injunction. See Doc. # 21. Therefore, that motion was submitted to the Court on the parties' memoranda and oral argument.

The Sixth Circuit recently restated the familiar standard which governs the granting of a Motion for a Preliminary Injunction:

> In determining whether a preliminary injunction should issue, a court must consider the following four factors:
>
> 1. whether the movant is likely to prevail on the merits;
>
> 2. whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction;
>
> 3. whether a preliminary injunction would cause substantial harm to others; and
>
> 4. whether a preliminary injunction would be in the public interest.

*G & V Lounge, Inc. v. Michigan Liquor Control Comm.*, 23 F.3d 1071, 1074, 1076 (6th Cir. 1994). See also, *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). None of these factors warrants the granting of the requested preliminary injunction.

First, with respect to the likelihood that Plaintiffs will prevail on the merits, the Court cannot conclude that they will prevail on the merits of the claim upon which they predicate their [*39] request for injunctive relief. The Plaintiffs have not asserted a claim in which they allege that any of the actions they seek to enjoin violates federal or state law. In essence, the Plaintiffs seek to have the Court enjoin Dayton from enforcing its building code. The Plaintiffs do not allege that Dayton's building code violates federal or state law. Rather, Plaintiffs argue that they are entitled to injunctive relief, because the Defendants have taken their property, the Wilcon Building, without paying just compensation. Therefore,

the injunctive relief the Plaintiffs seek is merely a request for status quo or stay put status, until the merits of their claims under the Takings Clause of the Fifth Amendment can be resolved. Above, in its discussion of the summary judgment motions, the Court has sustained the Defendants' motion for summary judgment on those claims, concluding that those claims are not ripe and that they must, therefore, be dismissed without prejudice. n27

n27 The Plaintiffs also cite the fact that the Common Pleas Court found that they had been denied property without due process. The Plaintiffs argue that principles of res judicata prevent the Defendants from challenging that court's conclusion. Above, the Court has rejected the Plaintiffs' contention that principles of res judicata prevent the Defendants from challenging the decision of the Common Pleas Court that BSW's constitutional rights were violated. Accordingly, this Court concludes that the Plaintiffs have not, to this point, demonstrated a substantial likelihood that they will prevail on the merits of their claim that they suffered a deprivation of property without due process.

[*40]

Second, the Plaintiffs have not demonstrated that they will suffer irreparable injury if an injunction is not granted. In May, 1993, an employee of Dayton wrote to Plaintiffs' counsel, explaining what further steps were necessary under RCGO § 150.246, to obtain a Certificate of Appropriateness and, thus, a permit to demolish the Wilcon Building. Plaintiffs chose not to pursue that option. The alleged building code violations which have caused the Plaintiffs to seek the preliminary injunction all arise out of the fact that the Wilcon Building is still standing. Indeed, Plaintiffs do not contend that the Wilcon Building is not in violation of Dayton's building code; Plaintiffs contend only that they should have long since been given permission to demolish it. However, Plaintiffs have had available to them, since May, 1993, a process by which they could have obtained permission to demolish that building. n28 In other words, any harm the Plaintiffs may suffer if an injunction is not granted flows from their own failure to have sought permission, after May, 1993, to demolish the Wilcon Building. Moreover, the Plaintiffs have not convinced the Court that they cannot be compensated [*41] for any harm they may suffer, if an injunction is not issued, by an award of damages in this action or in some subsequent action (either in an eminent domain action instituted after a successful mandamus action or in a new action under the Takings Clause, should the mandamus action prove unavailing).

n28 In their verified, supplemental complaint, the Plaintiffs do point out that, before they could have received a Certificate of Appropriateness, they might have been required to post a bond or to pay a mitigation fee § 150.246(C)), and they would have been required to submit a reuse plan (§ 150.246(B)). Thus, the Plaintiffs challenge the viability, although, significantly, not the constitutionality of the process which was available to them. However, the stark fact is that the Plaintiffs chose not to pursue the process; therefore, to say that it would have been onerous is pure speculation. Moreover, § 150.246(C) provides that the an applicant for a Certificate of Appropriateness can seek and receive a waiver of the requirements that a bond be posted and a mitigation fee be paid.

[*42]

Third, granting the requested preliminary injunction could cause substantial harm to others. Such relief would prevent Dayton from enforcing its building code. Moreover, the Wilcon Building is an eyesore and appears to be dangerous to passersby and to others using the neighborhood. See Doc. # 18 (Plaintiffs' evidence in support of their motion for preliminary injunction). If the requested injunctive relief is granted, the Wilcon Building will remain in its current, constantly deteriorating condition, posing an aesthetic blot and a potential health hazard. Therefore, neighbors of the Wilcon Building and the public generally face the prospect of substantial harm if an injunction is granted, harm greater than the harm to the Plaintiffs if the injunction is denied.

Fourth, for the above reasons, the public interest does not warrant the issuance of the requested injunctive relief.

Based upon the foregoing, the Court overrules the Plaintiffs' Motion for a Preliminary Injunction (Doc. # 12), with which Plaintiffs sought to have the Court enjoin Dayton from enforcing a Notice of Violation and Orders of Compliance issued for the Wilcon Building and from directing the Plaintiffs [*43] to maintain the Wilcon Building, to correct hazardous conditions at that property and to remove an underground storage tank.

As a result of the Court's ruling on the present motions, the following claims of the Plaintiffs remain, to wit: 1) their claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment (parts

of the first, second, third, eighth, ninth, tenth and eleventh claims for relief), claims upon which the Defendants have not sought summary judgment; n29 2) their claim that Prosser's false statements interfered with their right to petition the government for redress of grievances (the fifth claim for relief); n30 and 3) Plaintiffs' state law claims (the sixth and seventh claims and parts of the eighth and ninth claims). n31 In addition, Plaintiffs' request for an award of punitive damages against Prosser remains. Two trial dates are scheduled for this litigation, November 6, 1995 (a possible trial date) and January 22, 1996. See Docs. # 46 and # 44.

n29 Plaintiffs also rely upon alleged violations of the Due Process and Equal Protection Clauses to support their fourth claim for relief, a claim under § 1985(3). This Court has sustained the Defendants' motion for summary judgment on that claim. [*44]

n30 The Plaintiffs do not state whether that claim arises under state law, the First Amendment to the United States Constitution, or both. n31 Plaintiffs' twelfth claim for relief, a claim for attorney's fees under *42 U.S.C. § 1988*, also remains. However, that is not an independent claim; rather, Plaintiffs will be entitled to an award of attorney's fees under § 1988, only if they prevail upon another of their federal claims.

WALTER HERBERT RICE

UNITED STATES DISTRICT JUDGE