# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **EASTSIDE LINCOLN MERCURY, INC.** **ET AL.,** | : | **CASE NO.  C-1-01-567** |
| | : | **Judge Susan J. Dlott** |
| **Plaintiffs,** | | **Special Judge William O. Bertelsman** |
| | : | |
| **v.** | : | |
| | : | |
| **FORD MOTOR COMPANY, ET AL.,** | : | **PLAINTIFF'S PROPOSED** **JURY INSTRUCTIONS AND** **INTERROGATORIES** |
| **Defendants.** | : | |
| | : | **OBJECTIONS TO FORD'S** **PROPOSED JURY** **INSTRUCTIONS AND** **INTERROGATORIES** |

_____

Pursuant to this Court's order, the Plaintiff, Eastside Lincoln Mercury, Inc.

("ELM"), hereby submits its proposed jury instructions and interrogatories, and

raises its preliminary objections to Ford's proposed jury instructions and

interrogatories based upon the Parties' review of drafts and discussions thereon.

Respectfully submitted,

___/s/_____
Alan J. Statman (0012045)
Gregory J. Berberich (0043651)
Lawrence A. Flemer (0018673)
STATMAN, HARRIS, SIEGEL & EYRICH, LLC
2900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio  45202
Tel.    (513) 621-2666
Fax    (513) 621-4896
Attorneys for Plaintiff

**EASTSIDE LINCOLN MERCURY PROPOSED JURY INSTRUCTIONS AND INTERROGATORIES**

**PLAINTIFF'S JURY INSTUCTION NO.**

**BREACH OF CONTRACT/ DAMAGES**

Eastside Lincoln Mercury and Ford entered into two contracts, known as Sales and Service Agreements, for the delivery and sale of Lincoln and Mercury vehicles manufactured by Ford.  Eastside Lincoln Mercury claims that Ford breached those contracts and caused it damages. Before you can find for the Plaintiff on this claim, you must find by the greater weight of the evidence that (A) the parties entered into a contract (or contracts); and (B) Ford breached the contract (or contracts) by failing to perform its terms.

A contract is breached when one party fails or refuses to perform its duties under the contract.

Good faith means honesty in fact in the conduct or transaction.

If you find by the greater weight of the evidence that Eastside Lincoln Mercury proved this claim, then you must further decide whether Ford's breach caused Eastside Lincoln Mercury to suffer any damages, and if so, in what amount.  If you find by the greater weight of the evidence that Eastside Lincoln Mercury failed to prove any part of its claim, then you will find for Ford on this claim.

If you find by the greater weight of the evidence that Ford breached the contract, Eastside Lincoln Mercury is entitled to damages in an amount sufficient to put it in the same position in which it would have been if the contract had been

fully performed by Ford to the extent that such damages are reasonably certain and foreseeable.

Lost profits are calculated by deciding what the Plaintiff was entitled to receive had the contract been performed. You should then add other damages, if any, suffered by Eastside Lincoln Mercury as a result of the breach by Ford.

You may only award damages whose existence and amount have been proved to you by the Plaintiff with reasonable certainty. You may not award damages that are remote or speculative.

You may only award those damages that were the natural and probable result of the breach of the contract, or that were reasonably within the contemplation of the parties as the probable result of the breach of the contract. This does not require that the Defendant actually be aware of the damages that will result from the breach of contract so long as the damages were reasonably foreseeable at the time the parties entered into the contract as a probable result of the breach.

OJI 253.01 (1), (2), (3), (7), (8)

OJI 253.29 (1), (2), (3), (4)

**PLAINTIFF'S JURY INSTUCTION NO.**

**OHIO MOTOR VEHICLE DEALER ACT (R. C. 4517.59) CLAIM**

A motor vehicle manufacturer/franchisor such as Ford has a duty under Ohio law to act in good faith towards its dealer/franchisees such as Eastside Lincoln Mercury.   Ohio law defines  "good faith" as honesty in the conduct of the transaction concerned, and the observance of reasonable commercial standards of fair dealing in the trade, including the duty to act in a fair and equitable manner so as to guarantee freedom from coercion, intimidation or threats of coercion or intimidation. However, recommendation, endorsement, exposition, persuasion, urging, or argument shall not be considered a lack of good faith.

Under of Ohio law "coerce" means to compel or attempt to compel by failing to act in good faith, or by threat of economic harm, breach of contract or other adverse consequence, but does not mean to argue, urge, recommend or persuade.

If Ford failed to act in good faith in any of the following, it is a violation of Ohio law:

1.    acting or purporting to act under the terms, provisions, or conditions of a franchise;

2.    terminating, canceling, or failing to renew a franchise;

3.    withholding or delaying delivery of motor vehicles out of the ordinary course of business or discriminating against any franchisee in the allocation or through the withholding from delivery of certain models of motor vehicles ordered by a franchisee out of the ordinary course of business;

4.    unfairly changing or amending unilaterally a franchisee's allotment of motor vehicles or quota in a sales contest without reasonable cause;

5.    employing any coercive techniques for any other purposes such

as obtaining franchisee participation in contests, "giveaways," or other sales devices;

6.    coercing, or attempt to coerce, a franchisee by threatening to award an additional franchise or agreement to another person for the sale of its same product in the same area of influence for the purposes of compelling such franchisee to yield to demands of the franchisor for increased sales of the franchisor's products, parts, expansion of facilities and improvement of operations inconsistent with good business practices of the franchisee;

7.    refusing to disclose to any new motor vehicle dealer who handles the same line-make, the manner and mode of distribution of that line-make within the same county; or

8.    engaging in any predatory practice or discriminate against any new motor vehicle dealer.

If you find by the greater weight of the evidence that Ford violated the Ohio Motor Vehicle Dealers Act, then you must decide what amount of money will compensate Eastside Lincoln Mercury for the actual damages which directly and proximately were caused by the violation(s) you find.

R.C. 4517.01 (A), (BB) and (CC)

R.C. 4517.59, infra

R.C. 4517.65

**PLAINTIFF'S JURY INSTUCTION NO.**

**FEDERAL AUTOMOBILE DEALER DAY IN COURT ACT CLAIM**

Under federal law, a motor vehicle franchisor has a duty to act in "good faith" towards its dealer/ franchisees in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling or not renewing the franchise. "Good faith" means the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee each party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party. However, recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

The term "franchise" shall mean the written agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract.

Coercion must include a wrongful demand that will result in sanctions if not complied with. However, a demand that is implicit, rather than explicit, is enough to support a cause of action under this law.

If you find by the greater weight of the evidence that Ford violated the Federal Automobile Dealer Day in Court Act, then you must decide what amount of money will compensate Eastside Lincoln Mercury for the actual damages which directly and proximately were caused by the violation(s) you find.

15. U.S.C. § 1222

15 U.S.C. §1221 (b) and (e)
*Fray Chevrolet Sales, Inc. v Gen. Motors Corp.,* 708 F.2d 202,206-7 (6th Cir. 1983)
*Sherman v British Leyland Motors, Ltd.,* 601 F.2d 429,446 (9th Cir. 1979)

## <u>PLAINTIFF'S JURY INSTUCTION NO.</u>

## <u>CIVIL CONSPIRACY CLAIM</u>

Under the law, a civil conspiracy occurs when there is a malicious combination of two or more persons to injure another, in person or property, in a way not competent for one alone, resulting in actual damages. The malice involved is that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another. The malice may be inferred from, or imputed to, a common design of two or more persons to cause harm to another.

An underlying unlawful act is required before a civil conspiracy claim can succeed. This act (or acts) must have been done in furtherance of the conspiracy.

If you find by the greater weight of the evidence that the Defendants engaged in a conspiracy, then you must decide what amount of money will compensate Eastside Lincoln Mercury for the actual damages which directly and proximately were caused in furtherance of the conspiracy.

*Williams v Aetna Financial Co.*, 83 Ohio St.3d 464,475, 1998 Ohio 294, 700 N.E.2d 859 (1998)
*Pickle v Swinehart*, 170 Ohio St. 441, 446, 166 N.E.2d 227, 229 (1960)
*Gosden v Louis,* 116 Ohio App. 3d 195,219-221, 687 N.E.2d 481 (Wood Cty. App. 1996)

### PLAINTIFF'S JURY INSTUCTION NO.

### FRAUD CLAIM

Eastside Lincoln Mercury claims that Ford, its officers and employees committed certain fraudulent acts upon which ELM relied to its damage.  Fraud is a civil wrong.  It is a deception practiced with a view to gaining an unlawful or unfair advantage.

Fraud is a false representation of fact, whether by words, conduct or concealment, which misleads another, so that he relies on it to his injury.

Fraud may also arise where there is a duty to speak, since one with a duty to speak must make a full and fair disclosure of the material facts. Failure to do so is a fraudulent concealment.

Eastside Lincoln Mercury claims that the Defendants made the following non-exhaustive list of misrepresentations to the Plaintiffs:

1. that they did not intend to eliminate Mr. Woeste as dealer principal of ELM or to eliminate the ELM dealer point;

2. that, if they did purchase ELM, they intended to do so in a *bona fide* manner and for fair market value;

3. that the warranty audit process was designed to address fraud in ELM's warranty repair process;

4. that ELM needed a Ford consultant, at a rate of $30,000 per eight weeks, disqualification from dealer awards programs, a business counseling meeting with Walls and Carter, personal signature of Mr. Woeste on all warranty claims, and removal or suspension of dealer franchise opportunities to correct a $6,000 warranty audit problem;

5. that ELM was receiving the same pricing, vehicle allocations, marketing support, dealership opportunities and customer financing as Reichert/KDG;

6.    that ELM was denied LPE certification and rebates because of an aesthetics issue involving the natural stone facade of its dealership building and that all established written requirements must be met in order to obtain LPE status;

7.    that Mr. Woeste was not allowed to dual ELM with any other Woeste owned dealership because Ford demanded that Lincoln and Mercury maintain separate identity from other dealer franchise operations with full facilities;

8.    that ELM was worth between $200,000 and $300,000 dollars; and

9.    that Reichert/KDG acted on its own behalf in negotiations with Mr. Woeste and ELM and not on behalf of Ford.

Eastside Lincoln Mercury also Defendants failed to disclose the following

non-exhaustive list of facts to the Plaintiffs when they had a duty to do so:

1.    that they intended to eliminate Mr. Woeste as dealer principal of ELM and eliminate the ELM dealer point;

2.    that Reichert/KDG dealerships, even those recently purchased dealerships who may have been on warranty audit action plans, were not subject to warranty repair audits;

3.    that they took actions designed to reduce the market value of ELM so that the Defendants could purchase the dealership for an amount below its fair market value;

4.    that the warranty audit process was designed to reduce the market value of ELM or force the dealer principal to sell rather than address fraud in ELM's warranty repair process;

5.    that ELM did not need a Ford consultant, at a rate of $30,000 per eight weeks, disqualification from dealer awards programs, a business counseling meeting with Walls and Carter, personal signature of Mr. Woeste on all warranty claims, and removal or suspension of dealer franchise opportunities to correct a $6,000 warranty audit problem;

6.    that ELM was not receiving the same pricing, vehicle allocations, marketing support, dealership opportunities and customer financing as Reichert/KDG;

7.    that ELM denied LPE certification and rebates because of the

Defendants attempts to remove its dealer principal in favor of Reichert/KDG and that Reichert/KDG was entitled to receive LPE status for all of its purchases when two of its three dealerships did not meet established written requirements to obtain LPE status;

8.    that the discussions with Mr. Woeste regarding assumption of the Florence Lincoln Mercury operation on favorable terms or as a dealer development opportunity were not made in good faith and were an inducement to sell ELM;

9.    that Mr. Woeste was not allowed to dual ELM with any other Woeste owned dealership because the Defendants intended to take actions designed to make ELM unprofitable and reduce the value of ELM so that the Defendants could purchase the dealership for an amount below its fair market value;

10.    that ELM was worth more than $200,000 to $300,000 dollars; and

11.    that Reichert/KDG were acting on behalf of Ford in negotiations with Mr. Woeste and ELM.

To prove that the Defendants engaged in fraud, Eastside Lincoln Mercury must prove by a greater weight of the evidence each of the following elements:

(1)    The Defendants made a false representation of fact with knowledge of its falsity or with utter disregard and recklessness about its falsity that knowledge may be found, **or** the Defendants knowingly concealed a fact when they had a duty to disclose that fact;

(2)    The representation **or** concealment was material to the transaction;

(3)    The representation **or** concealment was made with the intent of misleading Eastside Lincoln Mercury into relying upon it;

(4)    Eastside Lincoln Mercury was justified in relying on the representation **or** concealment, and did, in fact, rely on the representation **or** concealment; and

(5)    Eastside Lincoln Mercury was injured and the injury was

proximately caused by its reliance on the representation **or** concealment.

The representation or concealment must be material; that is, it must be important, necessary or having influence on the transaction. It must be so substantial and important that it influenced the person to whom it was made or from whom it was concealed.

A representation is false when it is not substantially true. The truth or falsity of a representation depends on the natural and obvious meanings of the words taking into consideration all the surrounding circumstances.

If a person has a duty to speak, he must make a full and fair disclosure of the material facts.  A partial disclosure is a concealment and may be fraud.

A person knows a representation is false when he or she is aware that it is not substantially true.

Ordinarily expressions of opinion, even though false, do not constitute fraud.  However, where one is employed to give advice on matters within the scope of his professional capacity, he commits fraud if he expresses an opinion which he knows to be false or which he gives with utter disregard and recklessness as to its falsity.

A representation is made with utter disregard and recklessness when the person who makes the representation is completely careless or indifferent to the consequences or the risk that the representation will cause the person to whom it is made to do or not do certain things.  If a person has no knowledge of a fact, but asserted it as true when it was false, you may find that he or she made the

representation with utter disregard and recklessness. A representation recklessly made without knowledge of the truth is the same as a false representation knowingly made.

A person intends to mislead another to rely on a representation or concealment when it is his or her purpose to mislead.  A person's intent is known only to himself or herself unless he or she expresses it to others or indicates it by his or her conduct.  Intent is determined from the way in which the representation or concealment is made, the means used and all the facts and circumstances in evidence.

There is a justifiable reliance on a representation or concealment when a person of ordinary care would rely on it under the same or similar circumstances.

Eastside Lincoln Mercury must be directly damaged by the reliance on the representation or concealment. This means that the damage was caused by the representation or concealment in a natural and continuous sequence and without which the damage would not have occurred.

If you find that Eastside Lincoln Mercury has proved by a greater weight of the evidence all of the elements of fraud, then you must decide what amount of money will reasonably compensate Eastside Lincoln Mercury for the actual damages proximately and directly caused by the fraud.  However, if you find that Eastside Lincoln Mercury failed to prove by a greater weight of the evidence any one or more of the elements of fraud or if you are unable to determine what happened, your verdict must be for The Defendants.

OJI 307.01, 307.03, 307.07, 307.11, and 307.17

*Williams v Aetna Financial Co.*, 83 Ohio St.3d 464, 1998 Ohio 294, 700 N.E.2d 859

(1998)

**PLAINTIFF'S JURY INSTUCTION NO.**

**PUNITIVE DAMAGE and ATTORNEY FEE CLAIMS**

Eastside Lincoln Mercury seeks punitive damages in connection with its fraud and conspiracy claims against the Defendants. You will decide whether the Defendants are liable for punitive damages in addition to any other damages you may award to Eastside Lincoln Mercury. The purpose of punitive damages is to punish the offending party and to make the offending party an example to discourage others from similar conduct. You may decide that the Defendants are liable for punitive damages only if you find by clear and convincing evidence that:

(A) the Defendants acts or failures to act demonstrated malice, aggravated or egregious fraud, oppression, or insult; and

(B)  Eastside Lincoln Mercury has presented proof of actual damages that resulted from those acts or failures to act by the Defendants.

"Malice" means that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge or a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm..

"Substantial" means major, of real importance, of great significance, not trifling or small.

Fraud is "aggravated" if it is accompanied by the existence of malice or ill will. Fraud is "egregious" if the fraudulent wrongdoing is particularly gross.

"Oppression" is an act or series of acts that wrongfully subject the victim or victims to harm or hardship by the unjust or cruel use of force or authority.

"Insult" means any act or remark that is consciously, deliberately, or intentionally scornful or humiliating.

If you award punitive damages, the amount should be fair and reasonable under all the facts and circumstances.  It should not be excessive, nor influenced by passion, sympathy or prejudice.

If you decide that Ford, Mr. Carter and/or Mr. Walls is liable for punitive damages in connection with Eastside Lincoln Mercury's fraud claim, you must also decide whether Ford, Mr. Carter and/or Mr. Walls is liable for the fees of the attorneys employed by Eastside Lincoln Mercury in this case.  If you decide that Ford, Mr. Carter and/or Mr. Walls is liable for those attorneys' fees, the Court will determine the amount.

1 OJI 23.71

JURY INTERROGATORY NO. _____
(Breach of Contract against Ford)


Do you find, from the greater weight of the evidence, that Defendant Ford

Motor Company breached its contracts with Eastside Lincoln Mercury and

proximately caused damages to the Plaintiff, Eastside Lincoln Mercury?



YES_____                              NO_____

_____         _____

_____         _____

_____         _____

_____         _____

If the answer to the foregoing interrogatory is "yes", how much do you find that Eastside Lincoln Mercury was damaged as a direct and proximate result of Ford's breach of contract?

$ _____

_____    _____

_____    _____

_____    _____

_____    _____

JURY INTERROGATORY NO. _____

(violation of R. C. 4517.59)

Do you find, from the greater weight of the evidence, that Ford Motor

Company, through its officers and employees violated the Ohio Motor Vehicle

Dealers Act, proximately causing damages to the Plaintiff, Eastside Lincoln

Mercury?


YES_____                              NO_____

_____          _____

_____          _____

_____          _____

_____          _____


R.C. 4517.01 (CC)

If the answer to the foregoing interrogatory is "yes", how much do you find that Eastside Lincoln Mercury was damaged as a direct and proximate result of Ford's violation of the Ohio Motor Vehicle Dealers Act?

$ _____

_____        _____

_____        _____

_____        _____

_____        _____

JURY INTERROGATORY NO._____
(Violation of Federal ADDCA )


Do you find, by the greater weight of the evidence, that Ford Motor

Company, through its officers and employees violated the Federal Automobile

Dealer Day in Court Act, proximately causing damages to the Plaintiff, Eastside

Lincoln Mercury?


YES_____                          NO_____

_____           _____

_____           _____

_____           _____

_____           _____

If the answer to the foregoing interrogatory is "yes", how much do you find that Eastside Lincoln Mercury was damaged as a direct and proximate result of Ford's  violation of the Federal Automobile Dealer Day in Court Act?


$ _____


_____    _____

_____    _____

_____    _____

_____    _____

INTERROGATORY NO. _____

(refusal to allow relocation)

The court has instructed you on the law regarding Eastside's breach of contract, Ohio Motor Vehicle dealers Act, and Federal Dealer Day in Court claims. In that regard, one of Eastside Lincoln Mercury's contentions is that should be permitted to relocate the dealership to another location, also owned by Mr. Woeste, where he presently operates Beechmont Isuzu. Do you find, by a preponderance of the evidence, that Ford has wrongfully denied Eastside permission to relocate Eastside to this location, and that Ford is obligated under the contract and the above stated laws to, in good faith, permit this relocation?

YES_____                          NO_____

_____          _____

_____          _____

_____          _____

_____          _____

JURY INTERROGATORY NO. _____

(Civil Conspiracy)

Do you find, by the greater weight of the evidence, that Robert Reichert and/or the Kenwood Dealer Group engaged in a civil conspiracy with the Ford Defendants against Eastside Lincoln Mercury that proximately resulted in damages to the Plaintiff?

YES_____                           NO_____

_____          _____

_____          _____

_____          _____

_____          _____

If the answer to the foregoing interrogatory is "yes", which Defendants engaged in a civil conspiracy against Eastside Lincoln Mercury that proximately resulted in damages to the Plaintiff, Eastside Lincoln Mercury?

Robert Reichert    YES_____          NO_____


                              _____          _____

                              _____          _____

                              _____          _____

                              _____          _____

KDG                YES_____          NO_____


                              _____          _____

                              _____          _____

                              _____          _____

                              _____          _____

JURY INTERROGATORY NO. _____

(Fraud)

Do you find, by the greater weight of the evidence, that the Defendants engaged in fraud against Eastside Lincoln Mercury that proximately caused damages to the Plaintiff?

YES_____                    NO_____

_____         _____

_____         _____

_____         _____

_____         _____

If the answer to the foregoing interrogatory is "yes", which Defendants engaged in fraud against Eastside Lincoln Mercury that proximately resulted in damages to the Plaintiff, Eastside Lincoln Mercury?

Ford, Carter          YES_____                    NO_____
and/or Walls

                 _____        _____

                 _____        _____

                 _____        _____

                 _____        _____

Robert Reichert       YES_____                    NO_____

                 _____        _____

                 _____        _____

                 _____        _____

                 _____        _____

KDG                   YES_____                    NO_____

                 _____        _____

                 _____        _____

                 _____        _____

                 _____        _____

If the answer to the foregoing interrogatory is "yes", how much do you find that Eastside Lincoln Mercury was damaged as a direct and proximate result of the Defendants' fraud?

$ _____

_____    _____

_____    _____

_____    _____

_____    _____

INTERROGATORY NO. _____

(punitive damages/attorney fees)

If you make an award of actual damages to Eastside, you may also consider an award of punitive damages against the Defendants. If you award actual damages to the Plaintiff, do you also find, by the greater weight of the evidence, that the Defendants acted with either malice, aggravated or egregious fraud, oppression or insult towards Eastside, as I have defined those terms in the Instructions?


YES_____                              NO_____

_____        _____

_____        _____

_____        _____

_____        _____

If the answer to the foregoing interrogatory is "yes", how much in punitive damages do you award Eastside Lincoln Mercury as a direct and proximate result of the Defendants' conduct?

$ _____

_____    _____

_____    _____

_____    _____

_____    _____

INTERROGATORY NO. _____
(attorney fees)


If you make an award of punitive damages against the Defendants, do you

also find by the preponderance of the evidence that Eastside should recover its

attorney fees incurred in the prosecution of this action, in an amount to be

determined by the Court?


YES_____                              NO_____

_____          _____

_____          _____

_____          _____

_____          _____

**<u>Plaintiff's Objections to the Ford Defendants'</u>**
**<u>Proposed Jury Instructions.</u>**

A.    General Objections to Ford's Proposed Instructions

Nearly all of Defendants' proposed instructions are needlessly repetitious.  For instance, the instructions and interrogatories repeat the preponderance of the evidence instruction—often on an element by element basis.  Such instructions violate the proscription against repetition found in 1 OJI Section 1.84, which recognizes that no matter how short a statement may be, it offends if it is used over and over again.  Such instructions are tantamount to arguing the Defendant's case, which is plainly improper in the jury charge.  In addition, this repetition also serves to confuse the jury as to the actual standard of proof, e.g., "a preponderance" or "a preponderance of a preponderance".  A simple statement of the burden of proof is sufficient to advise the jurors of their duty.

The Defendants also repeats the nominal damages instruction, again as a means of arguing their view of the merits. A single instruction on this point is proper, not a repeating one.

B.    Specific Objections To Ford's Proposed Instructions

1.    Elements of Breach of Contract

Ford's instruction is unduly restrictive in that it claims that the only breach that ELM may claim is a Section 9(b) breach of the sales and service agreement. Further, the franchise agreement is more that simply the SSA, and incorporates any other agreements, documents and course of dealings that define the Parties

relationship.  Therefore, ELM demands that the term "contract" be used instead of "sales and service agreement".

In addition to 9(b), ELM claims that Ford breached various portions of the contract, including the Preamble, Section 2(c)(1) concerning allocations and the entire nature of the agreement by entering into the ROFR which allows Reichert/KDG to jointly control with Ford all market representation actions and facilities actions in the Cincinnati market, including ELMS market representation actions and facilities actions.

Ford's instruction also requires proof of a material breach on Ford's part, yet materiality of the breach is not a defense available to a defendant in a breach of contract action.  See 2 OJI § 253.01(2) (citing Ashley v. Henahan, 56 Ohio St. 559, 47 N.E. 573 (1897).  The issue of "materiality" of a breach is only invoked if the defendant claims the Plaintiff has, himself, materially breached the contract, excusing the Defendant's performance.  No such claim exists here.  Therefore, the use and further definition of the term material breach in the instruction is improper.

2.    Damages for Breach of Contract

The Defendants have not raised the issue of ELM's substantial performance under the franchise agreement as a defense to this action and cannot do so now.

This instruction limits any recovery for breach of contract to the breach of the Sales and Service Agreements. However, any other agreements, documents and course of dealings that define the Parties relationship are also part of the

contract or franchise agreement.  Therefore, ELM demands that the term

"contract" be used instead of "sales and service agreement".

   3.  Instruction Under Ohio Motor Vehicle Dealer Act

   This instruction incorrectly states that the statute controls "certain parts" of

the relationship between automobile manufacturers and dealers; however, the

statute controls all aspects of the relationship.

   4.  Instruction on Definition of Good Faith under the Ohio Act.

   Ford's proffered instruction omits an entire section of the statutory

definition of Good Faith, which section includes "honesty in the transaction

concerned and the observance of reasonable commercial standards of fair

dealing in the trade as is defined in division S of section 1301.01 of the Revised

Code."

   Second, Ford's instruction improperly states that the failure to act in good

faith means the dealer *must show* that the manufacturer's actions were

commercially unjustified.  This definition is confusing and makes it appear that

the manufacturer only fails to act in good faith if it acts in bad faith.  The statute is

not so narrowly drawn.  Rather, the "good faith" requirement is clearly described

in the statute and is breached wherever the manufacturer fails to act honestly,

and in a fair and equitable manner so as to guarantee the dealer freedom from

coercion or intimidation, or threats thereof.

   5.  Definition of Commercially Unjustified.

    Ford's definition of this term is unsupported by any legal authority -

Ford simply made it up.  The definition offered, rather that serving as a further

clarification of "good faith" is equivalent to an instruction of what constitutes "bad

faith", a term not used by the legislature.  Ford's suggestion that conduct showing

a lack of good faith arises only where there is "no legitimate business purpose for

the conduct" would shield Ford from any liability so long as Ford can articulate

some business objective, no matter how thin.

Ford's proffered definition of "commercial justification" is a perversion of

R.C. § 4517.59, a remedial statute that must be interpreted liberally to achieve its

intended objectives.  See Earl Evans Chevrolet v. General Motors Corp., 74 Ohio

App.3d 266, 275 (Lake Co. 1991).  The court in Earl Evans Chevrolet made clear

that the Ohio MVDA is far more liberal than the ADDCA in its definition of

"coercion".

> In the absence of any statutory definition, the federal courts have decided
> to attach the common, ordinary meaning to "coercion." However, the Ohio
> legislature chose to define coercion as "the failure to act in a fair and
> equitable manner in performing or complying with any terms or provisions
> of the franchise or agreement." This is clearly a different standard of
> conduct.
>
> R.C. 1.11 is perhaps the most elucidating concerning the construction of
> "good faith" and "coercion". R.C. 1.11 states:
>
>> "Remedial laws and all proceedings under them shall be liberally
>> construed in order to promote their object and assist the parties in
>> obtaining justice. The rule of the common law that statutes in
>> derogation of the common law must be strictly construed has no
>> application to remedial laws; but this section does not require a
>> liberal construction of laws affecting personal liberty, relating to
>> amercement, or of a penal nature." (Emphasis added.)
>
> ***
>
> We agree with this analysis regarding the remedial nature of R.C. Chapter
> 4517.  Liberally construing, therefore, "good faith" and "coercion," we hold
> that to establish a violation of R.C. 4517.59(A), it is sufficient to show that
> a manufacturer, outside the ordinary course of business, withheld or

> delayed delivery, or threatened to withhold or delay delivery of scarce
> vehicles from a dealer. Such a showing would also establish a violation of
> R.C. 4517.59(F).

74 Ohio App.3d at 275-276 (emphasis added).  The Ohio statute is concerned

with the *means* taken to achieve the end—not the end itself.

> 6.        Definition of Discrimination.

Ford proffers a definition of "discrimination" that is neither contained in the

OMVDA statute nor the case law construing it.  The term discrimination is not

defined under the statute and is not a term of art.  Thus, the jury can apply the

ordinary meaning of the term.

Despite what Ford contends, Ohio law makes clear that this statute is

remedial and is intended to protect dealers from the equal bargaining power of

automobile manufacturers.  Adopting Ford's definition completely negates the

protections the statute seeks to provide.

Moreover, the case cited by Ford, Halleen Chevrolet, Inc. v. General

Motors Corp., 2001 Ohio App. Lexis 2862, 26-28 (Franklin Co. App. 2001), does

not define "discrimination" under R.C. 4517.59 (M) and does not create a

"business judgment" standard for determining R.C. § 4517.59(M) claims of

discrimination.  The Halleen court, in reviewing the factual findings of the hearing

officer of the Motor Vehicle Dealers Board of Ohio, merely found that there was

reliable, probative and substantial evidence that the manufacturer's actions were

uniform and standard for GM based upon its legitimate business purposes.  The

court did not create, or purport to create, a business judgment standard for

defining discrimination.

      7.      Definition of Ordinary Course of Business.

Ford proffers a definition here where none is needed. The term "ordinary course of business" is not defined under the statute and is not a term of art. Thus, the jury can apply the ordinary meaning of the term.

      8.      Elements of an Ohio Motor Vehicle Dealer Act claim.

This instruction is a conglomeration of all of the definitions discussed above and should not be given.  Sections 1(a), (b), (c), and (d) do not include all of ELM's claims under the statute and are worded in an unduly restrictive manner.

      9.      Damage for Violation of the Ohio Motor Vehicle Act.

Ford's instruction includes the "double damages" provision of R.C. 4517.63(A) that was inadvertently included in Eastside's draft instructions.  This provision is matter is for the Court post verdict and should be deleted from the instructions.

      10.   ADDCA Claim Against Ford.

Ford's first instruction purports to distill the requirements of the ADDCA but does so improperly. The ADDCA's requirements are not limited to the sales and service agreement, but rather apply to the entire "franchise" relationship, a term that is specifically used and defined in the statute. The duty is one of good faith in "performing or complying with any of the terms or provisions of the franchise." Ford's instruction also improperly attempts to limit Eastside's claims to those involving Ford's attempt to force the sale of the dealership. However, Eastside has discrete claims for losses from the abusive warranty audits, lost Blue

Sky value of the franchise, losses from the denial of LPE program participation, and increased operating expenses stemming from the Defendants' misconduct. The instruction mischaracterizes the case as a single issue case.

      11.    Instruction on Elements of ADDCA Claim.

Ford's instruction improperly uses conjunctive wording to claim that three elements are needed for recovery. Element one, failure to act in good faith, and three, resulting damages, are all that are required. Ford's second "element", which states that Ford's conduct must amount to "coercion and intimidation" is not really an element at all, it is simply a further definition of a "failure to act in good faith". "Good faith" is defined under 15 U.S.C. § 1221(e) as freedom from coercion and intimidation. The ADDCA does not require proof of a lack of good faith and proof of coercion or intimidation and instructing the jury as requested by Ford is error.

      12.    Instruction that Fraud Is Not Presumed.

Ford's proffered instruction is not part of the Ohio Jury Instructions on this topic and is superfluous.

      13.    Instruction that Certain Statements Cannot Be Fraud.

The beginning of this instruction is not taken from 3 OJI 307.05 and is incorrect. Ford has dropped the term "[g]enerally" from the official OJI instruction and has restyled this instruction to argue its case that certain statements can never be fraud, rather than provide a neutral statement of the applicable law. Ford's instruction is not a correct statement of the law. Plaintiff's proffered instruction accurately sets forth the pertinent sections of 3 OJI 307.05 (1), (2) and (3).

      14.    Definition of Duty to Speak.

This instruction improperly declares that when two parties enter into a business transaction, including a franchise agreement for the sale and service of automobiles, there is no relationship of special trust and confidence created and thus no duty to speak or disclose facts to the other. As a matter of fact and law, this statement is incorrect.

From a factual standpoint, Ford's management testified that the franchise relationship is based on interdependence between the dealer and Ford, and there is an implied duty of good faith in the relationship that means the franchisor should "always tell the truth." The franchise contract itself recognizes the special and interdependent relationship of the Parties and contains numerous disclosure and express cooperation requirements. There will also be testimony that Eastside relied on Jerry Carter's assurance that it would always have a "level playing field" with the other dealers in the Region, and suffered damages as a result. A jury could reasonably find special trust and confidence on these facts, and thus a duty to disclose.

Ford also erroneously claims that it had "no duty to speak" as a matter of law and that it cannot be held liable in fraud for any omissions to ELM because the parties "transacted business at arms length". This contention is absolutely absurd and is what one would expect out of an exploitative automobile manufacturer.

The Ohio and federal legislatures recognized the inherently unequal bargaining power between automobile manufacturers and franchisees and enacted special laws to protect franchisees from the abusive conduct of the

manufacturers.  The ADDCA, 15 U.S.C. § 1222, et seq., and the Ohio Motor

Vehicle Dealer Act, R.C. § 4517.59, et seq., are strictly designed to protect the

franchisee from the manufacturer and mandate good faith conduct on the part of

the manufacturer in its relationship with its franchisees.

Ohio courts have described R.C. § 4517.59 to be a "remedial law" that

should be interpreted liberally to achieve its intended remedial objectives.  See

Earl Evans Chevrolet v. General Motors Corp., 74 Ohio App.3d 266, 275 (Lake

Co. 1991).  In Kingsport Motors, Inc. v. Chrysler Motors Corp., 644 F2d 566, 572-

573 (6th Cir. 1981), the Sixth Circuit Court of Appeals cited the congressional

record of the ADDCA act as proof that automobile franchisees need special

protection from franchisor/manufacturers because of the "overwhelming

economic power" the manufacturer holds over them.

> Our view on this issue is strengthened by Congress' obvious intention to
> provide a remedy for the single dealer facing the possibility of bad faith
> coercion through employment of the overwhelming economic power of an
> automobile company like Chrysler. n1  In adopting the Dealer's Day In
> Court Act, Congress described its purpose thus:
>
> > AN ACT
> >
> > To supplement the antitrust laws of the United States, **in order to
> > balance the power now heavily weighted in favor of
> > automobile manufacturers**, by enabling franchise automobile
> > dealers to bring suit in the district courts of the United States to
> > recover damages sustained by reason of the failure of automobile
> > manufacturers to act in good faith in complying with the terms of
> > franchises or in terminating or not renewing franchises with their
> > dealers.  70 Stat. 1125.  (Emphasis added).

In support of its argument, Ford cites two cases two cases that support a

proposition that is the exact opposite proposition of the one they attempt to

support.  In <u>Blon v. Bank One, Akron, NA</u>, 35 Ohio St.3d 98, 101, the Ohio

Supreme Court stated:

> Ordinarily in business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other.
>
> However, this court has recognized that in certain circumstances there exists a duty to.  For example, a party to a business transaction in a fiduciary relationship with another is bound to make a full disclosure of material facts known to him but not to the other.  Such a duty may also arise out of an informal relationship where both parties to a transaction understand that a special trust or confidence has been reposed.  Full disclosure may also be required of a party to a business transaction "where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts."

<u>Blon v. Bank One, Akron, NA</u>, 35 Ohio St.3d 98, 101 (1988)(numerous citations

omitted).  The second case cited, <u>Landskroner v. Landskroner</u>, 154 Ohio App.3d

471, 486 (2003), relies upon the <u>Blon</u> holding.

> Nor does a fiduciary relationship exist between parties negotiating an arms-length commercial transaction.  <u>Blon v. Bank One, Akron, N.A.</u> (1988), 35 Ohio St.3d 98, 101, 519 N.E.2d 363 "In business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other."  <u>Id.</u>

As a matter of statute, and the facts of this case, these parties are

recognized as not having an "arms length" business relationship.  Therefore,

there is a duty of Ford to disclose facts to ELM that are relevant to its franchise.

    15.    Damages for Fraud.

This instruction unnecessarily merely repeats the preponderance of the

evidence charge and also repeats the nominal damages charge.

    16.    Ford's Civil Conspiracy Charge.

This instruction improperly limits recovery on this claim to proof of a conspiracy to commit a fraud. Ohio law, however, only requires proof of an underlying tortious act, which is a much broader standard.  In Ohio "tortious conduct" has been broadly interpreted to include the violation of any legal duty, including a statutory duty.  See Gor-Vue Corp. v Hornell Elektrooptik AB, 634 F. Supp. 535, 537  (N.D. Oh. 1986)(statutory and common law patent infringement claims held "tortious conduct" under Ohio's long arm statute) and Poindexter v Willis, 23 Ohio Misc. 199, 208, 256 N.E.2d 254,260 (1970 Mont. Co. Com. Pl.)(violation of child support statute constitutes tortious conduct under Ohio long arm statute).

A legal duty can arise from common law (such as common law fraud) *or* from violation of a statute (such as the ADDCA or the Ohio Motor Vehicle Dealer Act).  Where such statutes prohibit coercion and intimidation, i.e., willful and malicious misconduct, there is no doubt that their violation can be deemed tortious conduct for purposes of establishing a civil conspiracy.

17.	Definition of Underlying Unlawful Act.

This instruction is defective for the same reasons as the Civil Conspiracy charge: it improperly states that Eastside must prove fraud to establish an underlying unlawful act.  As shown above, any form of tortious conduct, including statutory violations, will suffice.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing

Plaintiff's Proposed Jury Instructions and Interrogatories and Objections was

served via ecf filing and ordinary U.S. mail on this 2nd day of November, 2004 to

the following:

      Elizabeth A. McNellie
      Baker & Hostetler
      Capitol Square, Suite 2100
      65 East State Street
      Columbus, Ohio  43215-4260
      Attorney for Ford Defendants


      and

      Steven D. Hengehold
      Rendigs, Fry, Kiely & Dennis
      One West Fourth Street, Suite 900
      Cincinnati, Ohio 45202-3688
      Attorney for Reichert/KDG


           ___/s/_____
           Gregory J. Berberich (0043651)