UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EASTSIDE LINCOLN MERCURY, INC., :
et al.,                          :
                                 :
           Plaintiffs,           :   Case No. C-1-01-567
                                 :
v.                               :   Judge Susan J. Dlott
                                 :
FORD MOTOR COMPANY, et al.,      :
                                 :
           Defendants.           :

**FORD DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Under the guise of seeking to "enforce the Settlement Agreement," Plaintiffs ask this Court to determine Eastside Lincoln-Mercury, Inc.'s ("Eastside") eligibility for discretionary vehicle support payments, despite the fact that resolution of this issue has nothing to do with the terms of the Settlement Agreement. For that reason, this Court does not have jurisdiction over this issue. Even if this Court has jurisdiction over this issue, however, Eastside is not eligible for the support payments in question.

As an initial matter, Plaintiffs' Motion has nothing to do with enforcement of the Settlement Agreement. All of the payments due under the Settlement Agreement have been

made. Eastside has resigned its dealership agreements. The case before this Court has been dismissed. Quite simply, there is nothing about the Settlement Agreement for this Court to enforce.

Plaintiffs, however, seek to shoehorn this dispute into a claim under the Settlement Agreement based on language regarding matters that were referenced in the Agreement only because they were not released under the Agreement. Those obligations, as so stated in the Agreement, are matters that exist (or in this case do not exist) regardless of the terms of the Settlement Agreement between the parties. As a result, determining the matter at hand goes well beyond enforcing the Settlement Agreement. Simply put, the existence of the Settlement Agreement and this Court's continuing jurisdiction for purposes of enforcing the Agreement does not mean that this Court has jurisdiction to determine every dispute that may arise between the parties. Because the purported obligation that Plaintiffs seek to enforce does not arise because of the Settlement Agreement, this Court has no jurisdiction to consider Plaintiffs' Motion. For this reason alone, the Motion should be denied.

In addition, Plaintiff Eastside is not entitled to the discretionary support payments in question. Prior to April 1, 2005, Lincoln offered its qualifying dealerships the ability to earn incentives based on the sales of new Lincolns. Affidavit of Kurt Brinkman at ¶ 3. (Exh. A). This program was call Lincoln Premier Experience ("LPE"). *Id.* As of March 31, 2005, LPE was replaced by a new incentive program called Lincoln Operational Support, in which incentives are paid based on the ordering of new Lincolns by the dealerships. *Id.* Because of the change in programs, dealerships with Lincolns in stock as of April 1, 2005 had a number of vehicles that would not be eligible under either program as they could not be sold under LPE or ordered under Operational Support. *Id.* Therefore, in order to bridge this gap in these programs,

Lincoln offered Operational Support for Lincolns in a dealership's inventory as of April 1, 2005. *Id.* The bridge payment, however, will not be made to any dealership that resigns or is terminated prior to the time these payments are due, either in August 2005 or January 2006. *Id.* at ¶ 6.

This change in incentives programs occurred on a national level while the negotiations for the settlement of this litigation progressed. As the Settlement Agreement filed by Plaintiffs reveals, Plaintiffs did not sign the Settlement Agreement until April 29, 2005. Therefore, until this Agreement was signed, no assumption could be made about Eastside's status as a Lincoln Mercury dealership and it had to be treated as any other dealership until that time. For that reason, Eastside was sent, prior to its resignation, a list of Operational Support bridge payments that could be expected based on the number of Lincolns in stock on April 1, 2005 – just as was true with every other Lincoln dealership in the country. *Id.* at ¶ 7. Nothing in this document, however, stated that any dealership would be entitled to these payments in the event that it ceased to be a Lincoln dealership.

Moreover, no person at Ford represented otherwise to Plaintiffs. When the vehicle inspection occurred on May 16, 2005, representatives of Plaintiffs did present the list of Lincolns it had received to representatives of Ford. Affidavit of Jeff Thormann at ¶ 3 (Exh. B). Neither Mr. Thormann nor Mr. Murphy, however, made any representation that these payments were due to Eastside. *Id.* at ¶ 4. Rather, because the Program at issue was new, Mr. Thormann told Mr. Beattie and Mr. Woodall that he would make inquiry about Eastside's eligibility and get back to them. *Id.*

Finally, receipt of these incentive payments by Eastside would be nothing short of a windfall. Specifically, Eastside did not sell the vehicles in question under the LPE program and,

in fact, required that Ford take the vehicles back from it in a procedure known as a rebill, so that Eastside's transaction with Ford is simply backed out of the system and Eastside is removed as the ordering dealership.[1] *Id.* at ¶ 5. Therefore, the dealership who purchased those vehicles became the ordering dealership and is eligible for the Operational Support incentive associated with those units. Brinkman Aff. at ¶ 8.

Moreover, Eastside did little to market its Lincoln or Mercury products during the final months that it was a dealership. Specifically, sometime in early March, Eastside moved all Lincoln and Mercury products off the showroom floor and from the display area in front of the building. Thormann Aff. at ¶ 6. The Lincoln Mercury inventory was relocated to an overflow lot behind Mr. Woeste's Chevrolet store and to an area behind the Lincoln Mercury building. *Id.* In short, Eastside did nothing to earn the incentive payments in question. Incentives, as the name suggests, exist to encourage dealerships to meet particular goals. Eastside did nothing to meet the goals of Lincoln with regard to the inventory Ford repurchased from Eastside. Forced payment of this incentive would be grossly unfair to Ford Motor Company.

Therefore, even if the receipt of these payments were a matter for consideration under the Settlement Agreement, which it is not, Plaintiffs are simply not eligible for these payments. Plaintiffs' Motion should be denied because this Court lacks jurisdiction to resolve this matter. Nevertheless, if this Court does consider the Motion on the merits, Plaintiffs' request for relief should be denied as they are not eligible for the incentive payments at issue.

---

[1] This manner of reacquisition was demanded by Eastside, rather than a normal repurchase that had originally been proposed by Ford.

Dated: June 23, 2005                                    Respectfully submitted,


                                                        /s/ Elizabeth A. McNellie
                                                        Elizabeth A. McNellie (0046534)
OF COUNSEL:                                             BAKER & HOSTETLER LLP
                                                        65 East State Street, Suite 2100
George W. Hairston (0030507)                            Columbus, OH 43215-4260
Baker & Hostetler LLP                                   Telephone: (614) 228-1541
65 East State Street, Suite 2100                        Facsimile: (614) 462-2616
Columbus, Ohio 43215                                    E-mail: emcnellie@bakerlaw.com

                                                        Trial Attorney for Defendants
                                                        Ford Motor Company, Jerry Carter, and
                                                        A.W. Walls


## CERTIFICATE OF SERVICE

A copy of the foregoing Ford Defendants' Memorandum in Opposition to Plaintiffs' Motion to Enforce Settlement Agreement was sent electronically and by United States mail, postage prepaid, to Alan J. Statman, Esq., and Lawrence A. Flemer, Esq., STATMAN, HARRIS, SIEGEL & EYRICH, LLC, 2900 Chemed Center, 255 East Fifth Street, Cincinnati, Ohio 45202, for plaintiffs, and Steven D. Hengehold, Esq., and James J. Englert, Esq., RENDIGS, FRY, KIELY & DENNIS, LLP, 900 Fourth & Vine Tower, Five West Fourth Street, Cincinnati, Ohio 45202, for defendants Robert C. Reichert and Kenwood Dealer Group, Inc., this 23rd day of June, 2005.

                                                        /s/ Elizabeth A. McNellie
                                                        Elizabeth A. McNellie



EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EASTSIDE LINCOLN MERCURY, *et al.*,  :
           Plaintiffs,  :
                                   :  Case No. C-1-01-567
v.  :
                                   :  Judge Susan J. Dlott
FORD MOTOR COMPANY, *et al.*,  :
           Defendants.  :

### AFFIDAVIT OF KURT BRINKMAN

I, Kurt Brinkman, being duly cautioned and sworn, do hereby depose and state:

1. This affidavit is based upon my personal knowledge.

2. I was, during all relevant times, the Operations Manager of the Lincoln Premier Experience and Mercury Advantage Programs of the Lincoln Mercury Division of Ford Motor Company ("Ford").

3. Prior to April 1, 2005, Lincoln offered its qualifying dealerships the ability to earn incentives based on the sales of new Lincolns. This program was call Lincoln Premier Experience ("LPE").

4. As of March 31, 2005, LPE was replaced by a new incentive program called Lincoln Operational Support, in which incentives are paid based on the ordering of new Lincolns by the dealerships.

5. Because of the change in programs, dealerships with Lincolns in stock as of April 1, 2005 had a number of vehicles that would not be eligible under either program as they could not be sold under LPE or ordered under Operational Support. Therefore, in order to bridge this gap in these programs, Lincoln offered Operational

Support for Lincolns in a dealership's inventory as of April 1, 2005. These bridge payments will be made in August 2005 and January 2006 for dealerships that elected the twice a year payment option and in January 2006 for dealerships that elected the annual payment option.

6. The "bridge" payments for vehicles in stock as of April 1, 2005 will not be made to any dealership that resigns or is terminated prior to the date when these payments would have been otherwise made.

7. A list of Operational Support bridge payments that could be expected based on the number of Lincolns in stock, like that received by Eastside, was sent to every Lincoln dealership in the country that had Lincoln vehicles in inventory.

8. As the Eastside vehicles were all repurchased under the rebill procedure, the dealership that subsequently purchased those vehicles from Ford became the ordering dealership and is eligible for the Operational Support Program incentives associated with those units.

Further affiant saith naught.

_____
Kurt Brinkman

SWORN TO BEFORE ME and subscribed in my presence this _22ND_ day of June, 2005.

STATE OF MICHIGAN
COUNTY OF WAYNE

_____
Notary Public

MY COMMISSION EXPIRES: 7-8-2005

2



EXHIBIT
B

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

EASTSIDE LINCOLN MERCURY, *et al.*, :
:
      Plaintiffs, :
: Case No. C-1-01-567
v. :
: Judge Susan J. Dlott
FORD MOTOR COMPANY, *et al.*, :
:
      Defendants. :

## AFFIDAVIT OF JEFF THORMANN

I, Jeff Thormann, being duly cautioned and sworn, do hereby depose and state:

1. This affidavit is based upon my personal knowledge.

2. I am, and have been during all relevant times, the Retail Development Manager for the Cincinnati Region of the Lincoln Mercury Division of Ford Motor Company ("Ford").

3. I was a part of the Ford team that conducted the inspection of Lincoln and Mercury vehicles at Eastside Lincoln Mercury, Inc. on May 16, 2005. On that day, Messrs. Woodall and Beattie presented to myself and Mike Murphy, who is also with Ford, the list of Lincolns Eastside had received in association with the Lincoln Operational Support Program.

4. At no time did either Mr. Murphy or myself make any statement to Messrs. Woodall and/or Beattie that any payments under the Lincoln Operational Support Program were due to Eastside. Rather, because the Program at issue was new, I told Mr.

Beattie and Mr. Woodall that I would make inquiry about Eastside's eligibility and get back to them.

5. Based on the request of Eastside, Ford repurchased all of the current model year vehicles from Eastside in a procedure known as a rebill, so that the original transaction in which Eastside purchased those units from Ford is simply backed out of the system and Eastside is removed as the ordering dealership.

6. In early March 2005, Ford personnel who regularly call on the Eastside dealership reported to me that Eastside had moved all Lincoln and Mercury products off the showroom floor and from the display area in front of the building. The Lincoln Mercury inventory was relocated to an overflow lot behind Mr. Woeste's Chevrolet dealership and to an area behind the Lincoln Mercury building. The vehicles were still in these locations when the inspection occurred in May.

Further affiant saith naught.

_____
Jeff Thormann

SWORN TO BEFORE ME and subscribed in my presence this 22nd day of June, 2005.

PHYLLIS L. RICHARDSON
Notary Public, State of Ohio
My Commission Expires Mar. 24, 2007

_____
Notary Public

2