FILED
JAMES BONINI
CLERK

05 JUN 30 AM 2: 12

Alan J. Statman (0012045)
Lawrence A. Flemer (0018673)
Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| EASTSIDE LINCOLN MERCURY, INC. ET AL., | : | CASE NO. 01CV00567 |
| | : | |
| Plaintiffs, | : | Judge Dlott |
| v. | : | |
| | : | PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT |
| FORD MOTOR COMPANY, ET AL., | : | AGREEMENT |
| Defendants. | : | |

## MEMORANDUM

Ford opposes Plaintiffs' pending motion with two arguments. Ford first argues that the instant claim has nothing to do with the Settlement Agreement, leaving the Court no jurisdiction to decide it. To reach this conclusion, Ford would rewrite the Settlement Agreement by ignoring its scope and the parties' stated intentions to resolve all claims, whether past, present or future. Second, Ford attempts to rewrite the Lincoln Operational Support Program ("LOS program") by engrafting a new exclusion for resigning or terminating dealers that was never communicated to its dealers and never existed when

Eastside enrolled. Neither of these arguments has merit. Accordingly, Plaintiffs' motion should be granted.

1. **The Court Has Jurisdiction Over the Instant Dispute.**

As shown in Eastside's primary memorandum, the parties stated their intention in the Settlement Agreement to resolve "any and all claims Plaintiffs have, may have had, or may have in the future with Ford."[1] Given that Eastside's consideration for the Agreement included resigning its Lincoln and Mercury dealerships, it is self-evident that claims relating to ongoing dealership programs were expected to be resolved under the Agreement.[2] If not, Eastside would be left without a remedy for claims like the present, as Ford's memorandum wrongly concludes. This conclusion is irrational under the circumstances. A resigning dealer would have no reason to throw away over $16,000 of incentive funds already earned and owed.[3] Yet Ford's position is that Eastside did so when it signed the Settlement Agreement.[4]

Ford's argument runs counter to the plain language of the Agreement which embraces all claims of any and every conceivable origin. The Agreement is a global one in every sense of the word. Nowhere did the parties carve out the LOS program or Eastside's rights relating to it.

Finally, Ford cannot have a release for all claims and then dishonor those it chooses, too. Allowing such a result brings a windfall to Ford, not the other way around.

2. **Eastside Is Entitled To Payment Under the LOS Program Rules.**

---

[1] Settlement Agreement, pp. 3-4.
[2] Ford does not dispute that the Lincoln Operational Support Program was a national dealer incentive program, replacing another such program known as Lincoln Premier Experience. Ford Memorandum at pp.2- 3; Brinkman aff. paras. 3-4.
[3] Ford does not dispute providing Eastside with its list of Operational Support Payments Pending prior to the effective resignation date. Beattie aff. para. 5 and exhibit 1 thereto.
[4] It is not surprising that Ford cannot identify any language in the Settlement Agreement supporting this bizarre conclusion.

2

Ford's second argument is that Eastside is ineligible for the program funds. Just as Ford's first argument rewrites the Settlement Agreement, this one rewrites the program rules. Ford now asserts—for the first time anywhere—that payments under the LOS program "will not be made to any dealership that resigns or is terminated prior to the date when these payments would have been otherwise made." [5] Yet the program rules say absolutely nothing about resigning or terminating dealers. [6] Ford's document states:

**Program Details**

Operational support will begin April 1, 2005. Key points about Operational Support:

- Funds will be based on Lincoln WSD (wholesale delivered price)
- Operational Support will be paid "off invoice" (will not appear anywhere on the Lincoln invoice and will not affect vehicle pricing, holdback, or any other invoice item)
- Applies only to vehicles ordered for retail sale
- Ordering dealer (not selling dealer) is paid the bonus based on the schedule below
- Operational support payments will be made on all Lincolns in stock on April 1, 2005 and all eligible vehicles ordered from April 1, 2005 to December 31, 2005.

\* \* \* \* \*

**Terms and Conditions**

By checking the "I Agree" box below I represent that I am the Dealer Principal or I have F2 singing authority to enter into this legally binding agreement and that:

- I have read and understood the contents of this enrollment form.
- On behalf of the dealership _____ I agree to be bound by the election selected above.
- I understand that by checking the "I Agree" checkbox I am entering into this agreement electronically with the same legal effect as if I signed my name on a written legal contract.

---

[5] Ford memorandum, p. 3; Brinkman aff. para. 6. Notably, Ford's affiant is unable to hinge this assertion on any portion of the program rules given to the dealer network.
[6] The enrollment form is the only document provided to Eastside describing the program parameters and conditions for payment. The form is attached as Exb 1 to the affidavit of George Beattie filed June 17, 2005 under seal.

Had Ford intended to withhold program funds from resigning dealers, it could have (and should have) said so when the program was implemented. Given an enrollment form touted by Ford as a "legally binding agreement", one is left to wonder how Ford can now ask this Court to change the agreement retroactively by imposing new restrictions not found in the program rules. Ford's attempt to now remove resigning dealers from the program is nothing more than a belated and baseless rationale invented to deny the payments due Eastside.

Ford's memorandum also asserts that Eastside "did nothing to earn the incentive payments in question." [7] This passing shot also misses the target. First of all, the LOS program was to pay dealers for *ordering* Lincolns, which Eastside had obviously done or it would not have had 20 such vehicles in inventory on the designated "in stock" date of April 1, 2005.[8] There were no other "earning criteria" under the program rules, and Ford cannot retroactively create them now.[9] Second, although the LOS program rules do not require any proof that the dealer incurred them, Eastside did incur operational expenses to hold these vehicles in its inventory. It paid floor plan interest to its lender every day the subject vehicles were on its lot, and it paid to advertise them as well.[10] These are exactly the type of operational expenses the program was supposed to offset.[11] Even if proving these operating expenses could somehow be deemed a valid requirement for payment, Eastside has plainly met it.

## CONCLUSION

As confirmed by Ford's own documents, Ford owes Eastside $16,516.92 in

---

[7] Ford memorandum, p. 4.
[8] The program rules state that payments will be made on all Lincolns in stock on April 1, 2005. Beattie aff., para. 5.
[9] Until Eastside filed this motion, Ford never questioned its eligibility for LOS program funds. On the contrary, shortly prior to the resignation date, Ford sent written confirmation to Eastside that it is due payments on the 20 Lincolns in question. *See* Lincoln Operational Support Pending Payments List, attached to Beattie aff. as Exb 2.
[10] Beattie aff., para. 2.
[11] The effective resignation date for Eastside's Lincoln dealership was May 19, 2005. Beattie aff., para. 2.

operational support payments. It is equally clear that the Court has jurisdiction to decide this matter under a Settlement Agreement intended to resolve all claims whether past, present or future. Ford's refusal to honor its obligations under the LOS program rules and the Settlement Agreement is without justification on any level. Accordingly, Eastside should also be awarded its attorney fees to obtain the requested relief.

*Lawrence A. Flemer*

Alan J. Statman (0012045)
Lawrence A. Flemer (0018673)
STATMAN, HARRIS, SIEGEL & EYRICH, LLC
2900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio  45202
Tel.   (513) 621-2666
Fax    (513) 621-4896
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Motion was served via ordinary U.S. mail on this 30th day of June, 2005 to the following:

Elizabeth A. McNellie
Baker & Hostetler
Capitol Square, Suite 2100
65 East State Street
Columbus, Ohio 43215-4260

Steven D. Hengehold
Rendigs, Fry, Kiely & Dennis
One West Fourth Street, Suite 900
Cincinnati, Ohio 45202-3688

_____
Lawrence A. Flemer (0018673)